# HIGH COURT OF ERRORS AND APPEALS,

## At Philadelphia, July Term, 1793.

James Lacaze, Michael Mallet, and John Ross, plaintiffs in error, *v.* State of Pennsylvania, for the ufe of Louis Lanoix.

AN information had been filed in the Supreme court 1793. of this ftate, by the attorney general, in behalf of the Commonwealth, in debt, againft *Lacaze*, *Mallet*, and *Rofs*, for the penalty of a ftipulation entered into, by the plaintiffs in error, in the court of Admiralty of *Pennfylvania*. The Attorney General informed, that, on the 24th *October*, 1783, *Lacaze* and *Mallet* exhibited a bill to the judge of the court of Admiralty of *Pennfylvania*, fetting forth, that five barrels of filver coin, amounting to 5285 *French* crowns, and 1580 dollars, faved from the wreck of a brigantine, and, on the fuit of the mafter, taken by procefs of that court, into the poffeffion of its marfhal, was the property of *Louis Lanoix* of *Bourdeaux*, that they were his agents, and that the coin ought to be delivered to them, to be tranfmitted to him; and that, upon this bill of *Lacaze* and *Mallet*, the judge of Admiralty decreed, that this coin, after deducting all cofts and charges, for faving it from the wreck, and profecuting the feveral claims in that court, fhould be delivered to them, on account of *Lanoix*, the right owner, that it might be remitted to *Lanoix*, agreeably to the tenor of their bill, they giving caution for the performance of the truft repofed in them agreeably to the practice and ufage of that court, and the laws of this Commonwealth; that, in confideration thereof, *Lacaze*, *Mallet*, and *Rofs*, afterwards, on 4th *November*, 1783, appeared before the judge of the court of Admi-

ralty, and ſtipulated and acknowledged themſelves to
owe and be indebted to this Commonwealth, in the ſum
of 4000*l*. ſterling, equal in value to 6666*l*. 13*s*. 8*d*.*
to be paid to the ſaid Commonwealth, in caſe *Lacaze*
and *Mallet* did not well and faithfully perform the truſt
repoſed in them reſpecting the ſaid coin, or ſhould fail
to indemnify the ſaid judge, and the officers of the ſaid
court, againſt all perſons lawfully claiming the ſame,
and againſt the claim of *Lanoix*.　The attorney general
further informed, that the marſhal of the court of Ad-
miralty, afterwards, on 6th *November*, 1783, by com-
mand of that court, after deducting all coſts and charges,
delivered 1580 dollars, and 6330 crowns to *Lacaze* and
*Mallet*, to be delivered forthwith to *Lanoix*.　The at-
torney general further ſaid, that *Lacaze* and *Mallet* did
not perform the truſt repoſed in them reſpecting this
coin, and did not, nor did either of them, remit this coin to
*Lanoix*, whereby action accrued to the Commonwealth,
to demand and have, of *Lacaze*, *Mallet*, and *Roſs*, the
ſum of 4000*l*. ſterling, equal in value to 6666*l*. 13*s*. 8*d*.
which they, though required on 1ſt *July*, 1786, had
not paid.

To this information the defendants in the Supreme
court, pleaded payment; and, on trial, a verdict was
found againſt them, that they did owe 3768*l*. 9*s*. 7*d*.
and did not owe the reſidue 2898*l*. 4*s*. 1*d*.　Judgement
was given in the Supreme court, on this verdict; and
the record being removed by writ of error, into the
high court of Errors and Appeals, the general errors
were aſſigned.

It was argued, at *July* term, 1792, by *Moylan*, *Mif-
flin*, *Ingerſoll*, and *Lewis*, for the plaintiffs in error; and
by *De Ponceau*, *Coxe*, *Sergeant*, and *Rawle*, for the de-
fendants in error.　The arguments laſted three days;
and a vaſt collection of authorities was ſtated.　The
judges took to this term, to conſider the caſe; and now,
in delivering their opinions *ſeriatim*, went over the ar-
guments and authorities on both ſides; and affirmed the
judgment of the Supreme court.

CHEW, PRESIDENT.　The counſel for the plaintiffs
in error, in their arguments before us, have contended,

* It ſhould be 6666*l*. 13*s*. 4*d*.

that the judgment of the Supreme court is erroneous, and ought to be reverfed for various reafons.

1793.

1. Becaufe, the Admiralty being a court of inferior jurifdiction, the declaration does not aver (as by the rules of law, they fay, it was effentially neceffary) that the fubject matter, of which the court of Admiralty took cognifance, was *infra jurifdictionem* of that court.

Much time was taken up, and many cafes cited on the queftion whether the Admiralty is, or is not, a court of inferior jurifdiction; and, although I incline to think, on confidering this point, that it is to be claffed among the inferior courts, it appears to me, circumftanced as this cafe is before us, to be totally immaterial for us to decide upon it, becaufe it appears, on the face of the record, that the Admiralty had paffed fentence, and that the fecurity taken in that court, which is the ground of the prefent action, was for the performance and carrying into execution that fentence; and I conceive, that, if the proceeding in the Admiralty was ever exceptionable, on account of the want of jurifdiction, the proper time to take advantage of it legally, was by application to the courts of Law for a prohibition to the court of Admiralty, while the caufe was *there depending and before fentence.* But, as fentence in this cafe had paffed in the Admiralty, we are, in my opinion, as a court of Law, precluded from calling in queftion the jurifdiction of the Admiralty; but, on the contrary, muft prefume, and take it for granted. It is now too late to examine into it. I ground my opinion on this point, on numerous adjudged cafes, ancient and modern, where motions have been made to the courts of *Weftminfter* for prohibitions to the Admiralty and Spiritual courts, on fuggeftions of their not having jurifdiction; and, in all the cafes I have met with on the fubject, the judges have univerfally held, that there is a great difference between an application made to them for a prohibition pending the fuit and after fentence. In the firft cafe, pending the fuit, the court will examine the whole cafe, and fee the ground of the proceeding in the Admiralty or Spiritual court; but that the rule is quite the reverfe after fentence is paffed; in fuch cafe they will not look out of the proceedings, for the party who applies for a prohibition muft fhew a nullity of jurifdiction clearly on the face of the proceed-

1 *Bunb* 17, 313. 1 *Str.* 187. *Cowp.* 423-4. 2 *T. Rep.* 472,694 3 *T. Rep.* 5. 4 *Burr.* 2035.

ings. I could cite a great number of cafes to fhew this to be a fettled and eftablifhed rule.

But even if it is admitted, that the declaration was defective, for not averring, that the caufe was *infra ju-rifdictionem* of the Admiralty, it is clear to me, that the defect is cured by the verdict. The cafe of *Bull v. Steward* is in point. It was an action on the cafe againft the defendant, bailiff of the Borough court of *Southwark*, for an efcape of *Alice Rawlins*, on *mefne* procefs, and a verdict for the plaintiff. On motion in arreft of judgment, it was objected, that the declaration did not alledge in what manner *Alice Rawlins* was indebted to the plaintiff, but only, in general, that fhe was indebted. It might be on a judgment, or fuch a debt as that court had no jurifdiction of, nor does it appear, that the caufe of action arofe within their jurifdiction. To this it was anfwered, and *refolved by the court*, that this being *after* verdict we will fuppofe every thing proved at the trial, which was neceffary to be proved, and that the caufe of action arofe within the jurifdiction, unlefs the contrary could be made appear on the face of the record. Judgment was given for the plaintiff.

On error in the cafe of *Alfton v. Bufcough*, the cafe was thus. Debt was brought on the ftatute, 2 *Ed.* 6, of tythes, wherein the plaintiff demanded the treble value ; and on *nil debet* pleaded, the plaintiff had a verdict. The error affigned was that the declaration was ill, in not alledging, that the defendant had carried away the corn without making an agreement for the tythes ; for the ftatute gives the penalty only where the tythes are carried off without any agreement for fo doing, therefore, if the defendant had agreed with the plaintiff for carrying off the corn without fetting out the tythes, as it doth not appear but he might, then it had been no forfeiture. And the court was of that opinion, to wit, that the declaration was ill for the above reafon, *if it had been upon a demurrer* ; but this was helped by the verdict, for if there had been any agreement proved at the trial, the plaintiff could not have obtained a verdict.

The cafe of *Hutchins v. Stevens*, was debt for rent againft the leffee, brought by the grantee of the reverfion. *Nil debet* was pleaded, and there was a verdict for the plaintiff. It was moved in arreft of judgment

*1793.*

*1 Wils. 255.*

*Carth. 304.*

*Sr. T. Ray, 487.*

that the plaintiff had not alledged in his declaration, that the defendant did ever attorn to the plaintiff's grant of the reversion. Resolved good enough after verdict. For it is apparent, if the plaintiff had not given the attornment in evidence, he must have been nonsuited; and wheresoever it may be presumed, that any thing must of necessity be given in evidence, the want of mentioning it in the record will not vitiate it after a verdict. And so judgment was given for the plaintiff.

In the case of *St. John v. St. John*, the plaintiff brought *Hob. 78.* debt for 40*l*. against the defendant, bailiff of *Stockbridge*, on the stat. 21 *Hen.* 6, for not returning him burgess of the said town to the last parliament. The statute directs that the sheriff shall send his precept to the mayor, but, if there be no mayor, then to the bailiff. The plaintiff declared that the sheriff had made his precept to the bailiff, without averring that there was no mayor. And, after verdict for the plaintiff, this was moved in arrest of judgment. But the court was of opinion clearly, that it was good, for *we shall not intend, that there is a mayor*, unless it be shewed; *and, if there was one, it should come properly on the other side.*

These cases, but more pointedly the last, apply to another objection, which was, that the declaration does not aver, that *Lanoix* was the owner of the silver coin, and prove, that, if he was not, it should have come properly from the other side.

2. The plaintiff's counsel object, that it appears on the face of the record, in this case, that the subject matter before the court of Admiralty was wreck. That wreck is of common law, and not of Admiralty jurisdiction. Consequently, the whole proceedings of the Admiralty, in this case, were *coram non judice*, and, *ipso facto* void.

Admit the fact to be as stated by the counsel for the plaintiffs in error, that it is apparent upon the record, that the subject before the court of Admiralty was wreck, in the legal and technical sense of the term; and they are certainly right in their conclusion.

It may not be improper here to define the term wreck, and consider in what respects it differs from flotsam, jetsam, and ligan.

Wreck, in its legal signification is confined to such

1793.    góods, as, after fhipwreck at fea, are, by the fea caft upon the land.

Flotfam is when a fhip is funk or otherwife perifhes, and the goods float upon the fea.

Jetfam is when a fhip is in danger of being funk, and, to lighten the veffel, the goods are caft into the fea.

Ligan is where the goods fo caft into the fea are fo heavy, that they fink, and the mariners tie a buoy or fomething to them, fo that they may find them again.

No goods of the three laft defcriptions, that is flotf-am, jetfam, and ligan, can be called or deemed wreck, fo long, as they remain *on the fea*; but if they are caft on the land by the fea, they *then*, and not till then, be-come wreck, and are undoubtedly fubject to the jurif-diction of the common law courts only. But if they are taken up at fea and brought on fhore, I take it to be clear, that the court of Admiralty, and not the courts of Common Law, have the jurifdiction.

*Molloy* 241.
*B. 2, c. 5.*
*5 Co.* 106-7.
*2 Inft.* 167.
*4 Inft.* 134-5.
*3 Comm.* 106.

To fupport this objection then, it was incumbent on the plaintiff's counfel to fhew clearly on the face of the record, that the fubject matter in the court of Admiralty was goods caft on the land by the fea, and I confefs, on the moft attentive confideration of the record, I can fee nothing in it, to warrant the objection. The word wreck, it is true, is repeatedly to be found in it ; but it is as often applied to the *fhip only* out of which the filver coin therein mentioned was faved, never to the coin itfelf. But let the record fpeak for itfelf. The petition of *Lacaze* and *Mallet* to the judge, fets forth, that five barrels of filver coin, the property of *Lewis Lanoix*, merchant in *Bourdeaux*, for whom they fay they were agents, had then lately been faved from the *wreck* of the *Brigantine, Count Durant*, whereof *Anthony Fourne* was mafter, and upon whofe libel or fuit, in the fame court depending, the procefs had iffued, had been taken into cuftody of the marfhall of the faid court ; and the peti-tion concludes with praying, that the faid *coin* fhould be delivered to them, in order that the fame might be re-mitted to the faid *Lanoix*, agreeably to the tenor of the pe-tition, they giving caution for the performance of the truft repofed in them, agreeably to the practice and ufage of the faid court, and the laws of the Commonwealth. And caution having been afterwards given agreeably to

1793.

the decree, we find on the record, that the marſhall returns, that by virtue of the writ of the ſame court, commanding him, after deducting all coſts and charges for ſaving the ſaid ſilver coin from the wreck afore̅ſaid, &c. to pay over and deliver the ſame to *Lacaze a̅*̅*d*̅ *̅Mallet*, and that he did pay over and deliver the ſam̅e̅ a̅ccordingly.

This being a ſtate of the whole record before us, ſo far as reſpects the proceedings in the Admiralty, juſtifies the obſervation I before made, that the word " wreck," mentioned in the record, is applied to the brigantine *Count Durant*, and not to the ſilver coin ſaved out of her. All that can fairly be collected then from the record is, that the veſſel from which the ſilver was ſaved, had been *wrecked*, not that *the ſilver ſaved out of her*, which the court held plea of, was " *wreck*," in its technical meaning, that is, thrown by the ſea on the land. But *non conſtat*, by the record, where the brigantine was wrecked, that is, loſt or periſhed. A veſſel ſhip-wrecked at ſea, may, in common *parlance*, with ſtrict propriety be ſaid to be wrecked, and, for any thing that appears to us on the record to the contrary, that might have been the caſe here. The fact however is not aſcertained. To maintain the objection, the plaintiff's counſel ought to ſhew beyond a doubt, from the record, that the *coin* was *wreck of the ſea*. To infer it, becauſe the brigantine, out of which it was ſaved, is only ſtated generally to have been wrecked, is by no means ſufficient. This objection, therefore, is in my opinion unfounded.

3. It is objected, that, if the Admiralty had juriſdiction of the ſubject, and the caution or ſecurity there taken was right and proper, yet it belongs to that court *excluſively* to proceed upon it, and to enforce their own ſentence, conſequently no action can be ſuſtained, on the caution ſo taken, in a court of common law.

In ſupport of this objection, the plaintiff's counſel have cited and relied on ſeveral authorities, which I have looked into and conſidered, the principal of which I ſhall notice.

The caſe of *Smart v. Wolf*, was cited. But this was 3 *T. Rep.* 336. a caſe of prize, and I will obſerve once for all, that there can be no doubt, agreeably to the rule laid down in all

F

our law books, but that the court of Admiralty, in all *prize caufes* has the fole and exclufive jurifdiction, and the Common Law courts cannot interfere, or give relief, ⬤ in this particular cafe of prize, enforce the judgment of that court. In prize caufes, and every incident and confequent proceeding therein, the Admiralty has fole and exclufive jurifdiction.

As the cafe of *Brymer v. Atkins*, feemed to be an authority on which the plaintiff's counfel more particularly relied, I will give a fhort ftate of it. A veffel and cargo had been condemned as prize, in the court of Admiralty at *Halifax*. An appeal was made from that fentence to the lords commiffioners of Appeals in *England* by the claimants, and fecurity was taken in *Halifax* from the captors in the ftrict form of a recognifance, that if that fentence was reverfed, the veffel and cargo, or their value fhould be reftored to the appellants. The court of Appeals reverfed the fentence of the court of Admiralty at *Halifax*, and were proceeding, on the fecurity fo taken, to enforce the performance of it. This cafe came before the judges of the Common Pleas, on a motion for a prohibition to the court of Appeals, and one of the principal grounds urged for the prohibition was, that the fecurity was in the form of a recognifance, which the Admiralty, not being a court of record, had no right to take. But the judges refufed to grant a prohibition, and conftrued the fecurity, though irregularly taken in the form of a recognifance, to be a ftipulation and undertaking to reftore the veffel and cargo, if the court of Appeals reverfed the fentence : and in the conclufion of their judgment on this point, they add, " The fecurity, therefore, operating as a ftipulation, *execution of it belongs to that court and that jurifdiction, to which the parties have agreed to fubmit.*"

The obfervation I make on this cafe is, that it was a prize caufe, in which the judges were folicited to prohibit the court of Appeals, a prize court, from enforcing the fentence of the inferior prize court. The law being eftablifhed, as I have fhewn, that, in all cafes of prize, the jurifdiction was folely and exclufively in the Admiralty, the judges were right, in determining, that the execution, in this cafe, belonged to the Admiralty or prize courts. The rule they lay down is not a general

one. It settles the point respecting prize causes, but goes no further. The judges apply the rule to that particular case only; no other was then in question before them. The case therefore fails in giving one satisfaction on this subject; and the question remains, whether the courts of common law, in other cases, cannot hold plea of securities taken in a court of Admiralty. It is to be lamented, that no case decisive of this question is to be met with, and that we are left to gain what information we can from cases which seem to have some analogy to this. And I find a great variety, where such actions have been sustained on judgments and proceedings in inferior and other courts.

Thus debt was brought in the court of King's Bench, on a judgment in the sheriff's court of the county of *York*; so on a judgment in the sheriff's court of the city of *London*. Debt lies on a statute staple; and on a recognizance in Chancery. Debt lies for an amercement or fine in a court Leet; and for a fine in admitting a tenant in the lord's manor court; and it lies on a judgment of nonsuit in an inferior court.

In most, if not all, of these cases, although the courts of *Westminster* could not take original cognizance, or hold plea, in the first instance, of the causes of action, which arose in the inferior courts, yet it is clear, that an action of debt may be brought there, to enforce and carry into execution their transactions; and, considering the Admiralty as an inferior court, I can see no reason, that carries *full* conviction to my mind, the case *of prizes* excepted, why the same might not be done as well on securities taken in the Admiralty court, as in the cases above referred to. But, supposing this on the whole to be a doubtful point, for my own part, I should not hold myself justifiable, in reversing the judgment of the court below, unless I could lay my hand on my heart, and say, I am fully satisfied, the court was wrong and mistook the law, which I cannot say with a good conscience upon the present question. It would not be sufficient to urge, that I have doubts upon it; I must be convinced, beyond all doubt, their judgment was erroneous, before I take upon me to pronounce it to be so.

*F 2*

1793.

*Robison's Entries*, 183, 232. *Hansard*. 80.
*Vidian* 123.
*Cro El.* 356, 465, 544.
*Hansard* 81.
*Vidian* 127.
*Co. Ent.* 118.
*Cro. El.* 608.
*Lev. Ent.* 62.
*Rastal.* 144, 553. *Vidian* 112, 119, 132.
3 *Lev.* 206.
*Sir T. Ray.* 68. *Cro El.* 581. *Buller*, 167. *Esp.* 238.—*Clift's Ent.* 244.
1 *Wils.* 316.

The cafe of *Morris v. Rees*, was cited by the plaintiff's counfel, in which it was adjudged, that a fuit by the affignee of a bail bond muft be brought in the fame court where the original action was laid.

In the fulleft report of this cafe, the reafon affigned by the judges is that the court where fuch action was brought is empowered to give general relief to the plaintiff and defendant in the original action, on equitable terms, which no court can properly do, but that in which the original action was brought. The reafon here given is peculiar to the fpecial cafe of a bail bond, and does not affect the cafe before us. And there is one cafe, and but one, that I have met with, where it was refolved, that a bail bond could be fued in another court. It is the cafe of *Chesterton v. Middlehurst*, where a bail bond given in the court Palatine of *Chester*, was fued in the King's Bench. The defendant filed fpecial bail below, then moved to fet afide the proceedings.— The court held the bringing the action there to be unfair, unlefs there were fpecial circumftances to warrant it, as the defendants being out of the jurifdiction, which was not pretended to be the cafe ; and the court refolved, that the plaintiff ought to have proceeded in the court below, and accordingly fet afide the proceedings in the King's Bench.

But it is faid, if this practice is admitted, it will make the lands of the fecurity liable to the payment of the money forfeited by the non-performance of the ftipulation ; which would not be the cafe if the ftipulation was left to be enforced by the Admiralty, as that court could not legally touch the real eftate of the parties ; that the ftipulation bound them perfonally, but a judgment in a court of common law would affect their lands.

It not having been proved, that the Admiralty, in the prefent cafe, had an exclufive jurifdiction, this objection can be confidered only as *argumentum ab inconvenienti*.

But the fame objection, if of weight, would lie in feveral cafes that have been mentioned in anfwer to it.— Thus on a judgment in a foreign country which does not bind land by their laws, debt, or *affumfit* will lie In *England*, where the judgment upon it is a lien on the defendant's real eftate. On a judgment in *England*, only the moiety of the lands can be extended on an *elegit*,

and retained by the plaintiff no longer than he is satis- 1793.
fied his debt and cofts from the rents and profits ; yet
debt will lie in this ftate on a judgment in *England*, and
the lands which the defendant holds here be taken in
execution, and the fee fimple fold by the fheriff under
our laws. So on a judgment in one of the American
ftates, *Virginia*, for inftance, on a contract made there,
where lands are by law not liable, and confequently were
never in the idea of the parties as fubject to be executed
and fold to fatisfy the debt, an action of debt will lie
here, and the judgment thereon will be a lien on the
land of the defendant. To an amercement or fine in a
court Leet, it has been determined, that a diftrefs is
incident, which can be made on the goods, but not
the lands of the perfon amerced. No other remedy
can be purfued in a court Leet. Yet debt for the
amercement will lie in *Westminster Hall*, and lands ex-
tended on the judgment.

Thefe cafes are to me full anfwers to this objection.
In all of them a fpecies of property is fubject to the
fecond judgment, which was exempted in the firft.

Another objection is, that Mr. *Rofs* was only collate-
ral fecurity, for *Lacaze* and *Mallet*, to the Common-
wealth, and, if refponfible at all, in a common law court,
no action of debt will lie againft him, but the proper
and legal remedy was an *indebitatus affumfit*, on the
fpecial agreement.

But how is it made out, that Mr. *Rofs* was only col-
lateral fecurity for *Lacaze* and *Mallet* in this cafe ?
Take a fummary view of the tranfaction. The court
of Admiralty was in poffeffion of a large fum of money,
for which the judge was ultimately accountable to the
right owner, whoever he might be, on his appearing
and proving it to be his property. It was then his
duty, as well as intereft to take care that he did not part
with it improperly. *Lacaze* and *Mallet* come into court
as volunteers, and inform the judge that the money is
the property of *Louis Lanoix*, a foreigner refiding at
*Bourdeaux*, for whom they fay they were agents and
tranfacted bufinefs, but from whom they do not pretend
to have any power or authority to demand or receive
this money, and pray the judge to put them in poffeffion

*F 3*

**Margin note:** 1 Roll. Ab. 665. Sir T. Ray. 68. Cro. El. 581.

1793.

of it, in order that they might remit it to the faid *La-noix*. The judge prudently and cautioufly, I think, refufes to deliver the money to *Lacaze* and *Mallet*, unlefs the will procure one or more perfons to undertake with ham for the money's being remitted. Mr. *Rofs*, on this fteps forward, and becomes bound to the Commonwealth in the penalty of 4000*l.* fterling, jointly with *Lacaze* and *Mallet*, that they fhould remit the money, and, on the joint credit of them all, the money was afterwards delivered accordingly by the judge's order.— The cafe thus circumftanced, there is no legal ground on which Mr. *Rofs* can be confidered as collateral fecurity in the engagement. It may with great propriety be faid, that, in the relation which fubfifts between Mr. *Rofs*, and *Lacaze* and *Mallet*, he was their fecurity, but as between the Commonwealth and *Lacaze, Mallet*, and *Rofs*, they, from the nature and terms of the contract and undertaking, are all three clearly in my opinion principals, and, as fuch, anfwerable to the Commonwealth for the non-performance of it; and, it being an exprefs contract, debt may be brought upon it agreeably to the fettled rule of law, that an action of debt will lie, when the fum or duty is certain and fixed.

My opinion is therefore that the judgment of the Supreme court be affirmed.

BIDDLE, J. Delivered his opinion, alfo at length, that the judgment of the Supreme court ought to be affirmed: becaufe the ftipulation was to be then prefumed to have been taken judicially, in a fubject within the jurifdiction of the court of Admiralty, and, as fuch, a good ground of an action of debt at common law. The death of that worthy man, fincerely regretted by all who knew him, has difappointed my hope of being able to lay his argument before the reader.

RUSH, J. On the trial of this caufe below, there was no doubt upon the merits; and accordingly the jury found a verdict for *Lewis Lanoix*, the plaintiff, upon which there was judgment. The record being removed into this court by writ of error, a number of reafons have been urged for reverfing the judgment.

If the ftipulation be in every refpect, and in every view of it, a void act, it will put an end to the controverfy. It is proper therefore to begin with this objection.

The maxim, that confent cannot give jurifdiction, 1793. feems to be a principle of univerfal jurifprudence ; and muft naturally take place in every country, where tribunals are inftituted with a gradation of powers. If the parties of their own choice, could leave behind them inferior courts, and, by mutual agreement, refort, in the firft inftance, to the higheft tribunal, it would effectually confound the limits prefcribed to different jurifdictions, and fruftrate the view of the legiflator in drawing lines of divifion among them. This idea fhows the reafon and the extent of the rule. It cannot therefore apply, where any inftrument is acknowledged before a court or magiftrate by the voluntary confent of a *fingle* perfon. For in *this* cafe the act of an *individual* has not the leaft tendency to defeat that fyftem of fubordination and diftribution of authority among the various courts, on which the judiciary eftablifhment is founded.

Upon this principle it is, of a voluntary jurifdiction, by an individual, to ufe the expreffion of chief juftice *Hale*, that a juftice of the peace may take a voluntary recognifance or information, out of his proper county ; for though he has no jurifdiction there, and it may therefore be faid to be *coram non judice*, it will bind the party, being a voluntary act. On the fame ground, it has been held, that a voluntary bond, given in the Spiritual court, by miftake, which they had no right to take, and was *void there*, was binding at common law. And where executors have been led into a miftake, and gave bail upon a writ of error, which the law did not require, the court refufed to difcharge the recognifance, and held it good, at *common law*.

2 *Hale* 51.
2 *Hawk.* 37.
3 *Cro.* 212-3.

*Folkes v. Dominique,* 2 *Str.* 1137.

*Johnfon v. Laferre,* 2 *Ld. Ray,* 1459.

Thefe are acts, to ufe again the expreffion of lord *Hale*, of voluntary jurifdiction in an individual, by which the authority of no court is injured or eluded ; and which, therefore, are confidered as obligatory upon the principles of the common law or common juftice.

The cafe of *Brymer v. Atkins* does by no means contradict this pofition. It was an adverfary fuit in the Admiralty, in which the appellee, by miftake of the officer had entered into a *recognifance*, inftead of a ftipulation, to reftore the full value of the veffel and cargo, in cafe the decree fhould be reverfed. The court were

*H. Bla.* 164.

F 4

clearly of opinion, though the fecurity had been entered in the form of a recognifance, it fhould operate as a ftipulation, and that the Admiralty alone could compel execution upon it. But why, I afk, could the Admiralty alone compel execution upon this ftipulation? For this plain reafon, that interlocutory fecurities, by way of ftipulation, on points arifing in the ufual courfe of bufinefs, are incident to a court of Admiralty; and the ftipulation by the appellee was evidently of that nature. A prohibition was *refufed* to a fuit in the Admiralty, upon a ftipulation made by order of the court, in a caufe of which they had cognifance; though the ftipulation was collateral and extrajudicial as to the main queftion; becaufe it was taken according to the *ufual courfe* of the court. The idea is this: wherever the ftipulation is taken agreeably to the *ufage* and *practice* of the court, in any ftage of a caufe of which they have *cognifance*, it can only be fued in the Admiralty. But if entered into *voluntarily*, for fome *extrajudicial* object having no connection with, or relation to any *exifting* caufe; fuch ftipulation cannot be fued in the Admiralty; becaufe the court had no right to take it agreeably to their own ufages.

Of this latter kind I confider the ftipulation entered into by Meffrs. *Rofs*, *Lacaze*, and *Mallet*. I hold that the taking it was an act unauthorifed by the *ufages* of the Admiralty, and wholly unprecedented, having no connection with, or relation to the caufe then before the court; and that the ftipulation may fo far *be* faid to be void, and *coram non judice*, that the parties were never amenable thereon in a court of Admiralty. This brings us fairly to the queftion.

Is a voluntary fecurity, taken by a court or judge, for an honeft and lawful purpofe, upon which no redrefs can be had in the *fame* court for want of jurifdiction, fo far a *nullity*, that a fuit cannot be maintained upon it in any other court? And I apprehend clearly it is *not*. The cafe of *Folkes v. Docminique*, cited before, feems to be in point. It is fo briefly ftated, according to the cuftom of the reporter, as to admit of explanation.

The ftatute 21, *Hen.* 8, c. 5, authorifes the Spiritual courts to grant letters of adminiftration, taking fecurity however for the true adminiftration thereof. After this,

*1 Kcb.* 88.

*2 Str.* 1137.

1793.

the ſtatute 22 *Charles*, 2, c. 2, directed the Ordinary, upon granting letters of adminiſtration, to take bonds from the adminiſtrator with ſureties for his faithful adminiſtration according to law. An adminiſtrator with the will annexed, *during the minority of an executor*, happened to give an adminiſtration bond in the Spiritual court, conditioned to return an inventory, to pay debts and legacies ; and it became a queſtion afterwards, whether the adminiſtrator could be compelled at law to pay a legacy in a ſuit brought by a legatee upon the bond. The court lay down the poſition, that adminiſtrations of this kind, during the minority of an executor, are not within the ſtatute of *Hen.* 8 ch. 5, and that the adminiſtrator was conſequently not obliged to give bond for the due adminiſtration of the eſtate : neverthelefs they gave judgment againſt him, and made him pay the legacy.

This adminiſtration bond was therefore ſo far *coram non judice*, that the party was not obliged to *give* it, and the court had no right to require it. Here then we ſee a voluntary ſecurity, given for an honeſt and lawful purpoſe, on which no ſuit could ever have been maintained in the court that took it (for the Spiritual court cannot hold plea of debt upon bond) neverthelefs afterwards eſtabliſhed againſt the party in a court of common law. In one circumſtance, this caſe goes beyond that now in contemplation of this court. It might be ſaid, the *bond* was given by miſtake ; but the *ſtipulation* was notoriouſly given by the parties with *their eyes open*.

I conceive it to be the general rule of law, that common law ſecurities, taken in one court, may be ſued in another. So we find ſeveral inſtances of recogniſances taken in Chancery being ſued at common law, and no objection ever made to it. And it is merely for the ſake of convenience, *not* that the principles of law require it, that the courts of *Weſtminſter Hall* have, of late years, adopted the reſolution of not permitting bail bonds to be ſued in any *other* court than that, out of which the original proceſs iſſued.

2 *Com. Dig.* 634.

1 *Mod.* 29. *Cro. E.* 608.

1 *Bur.* 642, 3. *Burr.* 1923.

In my view of this cauſe, the doctrine of wrecks has nothing to do with it. For, whether the Admiralty had juriſdiction or not upon the libel filed by the captain for ſalvage, is entirely out of the queſtion. Let this point

be as it may, the interest of *Lewis Lanoix* upon a collateral ground, cannot be affected by it. Nothing can be more unreasonable, than upon the present controversy, between *Lanoix* and the plaintiffs in error, to call upon *Lanoix* to shew, that the Admiralty had jurisdiction, on a suit brought by the captain against the property of *Lanoix*. The very idea is pregnant with injustice and oppression. Is *Lanoix* to be responsible for the consequences of the captain's suit in the Admiralty, if they had not jurisdiction? Is it right, is it just, that he should be stripped of his property to the amount of thousands, because a third person, without his orders or knowledge, may have gone into a court of Admiralty, and illegally filed a libel? Upon the supposition, that the court had no jurisdiction, it would be repugnant to every principle of law and justice, to suffer the plantiffs in error to avail themselves of it, and thereby avoid their own voluntary act, to the great injury of an innocent third person.—— Messrs. *Lacaze* and *Mallet* were never *cited* in the Admiralty. They were not parties to the suit *depending there*; they went *voluntarily* into court; and asked a *favour*, which was granted, on their engaging to do an act of *justice*, viz. to remit the silver to the right owner, whom they stated to be *Louis Lanoix*. The jurisdiction of the Admiralty is not the *foundation* of the present suit; but their going voluntarily into court, and entering into the stipulation, which will bind them, independent of every consideration respecting jurisdiction. The plaintiffs in error could not have been compelled to enter into any stipulation with regard to the silver then in possession of the Admiralty; but having done it of choice, and at their own request, the common law proceeding on those principles of integrity and fairness, which ought to be the basis of all laws, demands a strict and faithful compliance with their contract.

With respect to the objection, that the declaration recites the proceedings in the Admiralty, and that, therefore, it should appear from *them*, that the court had jurisdiction, I think the recital is surplusage. There was no necessity for it. The declaration would have been good, if it had only stated the stipulation, and the reasons of giving it. The proceedings on the libel by the captain, form no part of *Louis Lanoix's* title to the mo-

ney: the ftipulation is the foundation of the demand. 1793.
It is not the cafe of *fetting* forth a title *defectively*, but
a recital of proceedings immaterial, unneceffary, and
fuperfluous. The declaration might have ftated the
decree in the Admiralty, the actual delivery of the fil-
ver, and the ftipulation, omitting the recital of the pro-
ceedings on the libel by the captain; and I think there
can be no doubt, it would have been good. We find
thefe things are, in fact, ftated; and they form the *real*
title or ground of action fet up by *Lewis Lanoix*. The
cafe of *Rufton v Affinal* cited at the bar, was an action *Doug.* 654.
by an indorfee againft an indorfor, of an accepted bill of
exchange, and the declaration omitted to alledge two
facts, viz. a demand upon the acceptor, and notice to
the defendant of the acceptor's refufing to pay. The
court held, the verdict did not cure thefe objections.
Becaufe the declaration upon the face of it, contained
no ground of action, and no proof at the trial could
therefore make it good; and not being laid, it was not
requifite they fhould be proved. But in the cafe now
before the court, the declaration ftates every thing ne-
ceffary, and goes further and ftates what is fuperfluous.

Suppofe on a fuit by an indorfee againft an indorfor
upon a bill of exchange *not accepted,* the plaintiff fhould
fet forth in his declaration a demand upon the *drawer,*
and notice to the *defendant* of the drawer's refufing to *Heylen verfus*
pay (which, it is fettled, are not neceffary in fuch cafe) *Adamfon.*
can it be pretended, that inferting this unneceffary mat- 2 *Burr.* 669,
ter would deftroy the right of the indorfee to recover 652.
from the indorfor?

It has been faid, the declaration does not fufficiently
ftate, that the filver was the property of *Lanoix.*

I do not fee how it could have been otherwife fet
forth. It ftates that *Lacaze* and *Mallet*, in their memo-
rial alledged it to be his property, that they were his
agents, and as fuch apply to have it delivered to them,
for the avowed purpofe of remitting it to him. It then
ftates the delivery of the filver, for the purpofe aforefaid,
and that the plaintiffs in error acknowledged themfelves
indebted to the Commonwealth in the fum of 6666*l.* 13*s.*
8*d.* in cafe they did not perform the faid truft repofed
in them; and then it affigns the breach.

Befides, I do not conceive it to be material, in the

prefent ftage of the bufinefs who was the owner. The plaintiffs in error might have fhewn on the trial of the caufe below, that *Lanoix* was *not* the owner. The verdict has afcertained the parties to the contract, and eftablifhed the fact, that the filver was *never* remitted. It is therefore too late to alledge, that the filver might have belonged to fomebody elfe. If this had really been the cafe, perhaps it would have been ground to have nonfuited the plaintiff, but is certainly no reafon for granting a new trial or reverfing a judgment.

It was further objected, that debt will not lie againft the plaintiffs in error. I have already obferved, that the ftipulation fhould be confidered in the light of a mere contract, and, as fuch, binding upon the *parties*, being a fair and honeft engagement for the performance of an act in itfelf lawful and moral, and that it could be fued only at common law. The action is not brought upon *an instrument* of writing; nor is any inftrument of writing declared on; but it is brought upon a contract to pay a fixed fum of money, and the agreement or ftipulation before the judge of the Admiralty is *the evidence* of that contract. We cannot travel out of the record; and it does not appear from the record, that any written ftipulation ever exifted. We muft, therefore, take it to be a parole contract; fupported by parole evidence. It is a precife and pofitive contract by the three plaintiffs in error, and not by Mr. *Rofs alone*, that the filver fhall be committed to *Lanoix*. The queftion then is this:— Where three perfons, fay *A. B.* and *C.* own themfelves indebted to *D.* in a fpecific and afcertained fum to be paid to the faid *D.* in cafe *A.* and *B.* fhall not perform a particular act, whether, if the act be not executed by *A.* and *B.* an action of debt will not lie againft all three upon fuch contract.

This is exactly the ftate of the queftion before the court. Meffrs. *Rofs, Lacaze,* and *Mallet,* on the 4th of *November,* in the year 1783, acknowledged themfelves to owe and to be indebted to the Commonwealth, in the fum of 4000*l.* fterling, equal in value to 6666*l.* 13*s.* 8*d.* currency, to be paid to the Commonwealth, in cafe the faid *Lacaze* and *Mallet* did not faithfully perform the truft repofed in them refpecting the faid filver coin. They have not remitted the filver, and the

*Lee v. Edwards,* 1*Lev.* 280.

queſtion is, will an action of debt lie againſt them all three.

It is well known, an action of debt will lie, not only upon a bond, or bill, but on a note of hand, a ſpecial bargain, a parole leaſe, a parole contract, or a verbal bargain to pay a fixed price for a certain parcel of goods. In ſhort, all the law requires to found an action of debt is, that the ſum be fixed and determinate, for which the ſuit is brought. So where the contract is by parole, and depends upon a *condition*, it is equally clear, that debt will lie. As if a man promiſe to pay one 20*l.* if he will marry his daughter; an action of debt lies, without any ſpecialty, if the marriage takes effect. It is brought to compel a ſpecific performance of the contract: but an action of *indebitatus aſſumſit* is to recover damages for the breach of it.

The caſe of *Stratton v. Rastal* was ſtrongly urged on the part of the plaintiffs in error, to prove, that an action will not lie againſt Mr. *Roſs* conſidered in the light of a ſecurity. The caſe there was an action upon an implied *aſſumſit*, brought for money had and received to the uſe of the plaintiff, who, it appears, was the purchaſer of an annuity, for the payment of which the defendant was bound as a ſecurity *with* the perſon who had granted the annuity. The bond and other writings executed to ſecure the payment of the annuity, became void by the plaintiff's neglect to regiſter them; and the action was brought by him to compel the defendant, who was the ſecurity to refund the money. The court were divided in their opinion. *Aſhurst* thought the plaintiff ought to recover. *Buller* and *Grove* were of a different opinion, upon good grounds; and held that the defendant was ſecurity for the payment of the annuity, not the repayment of the conſideration; and that the plaintiff's own neglect to regiſter the ſecurities ought not to raiſe an implied *aſſumſit*, whereon to charge the defendant, who had never received a farthing, and was not ſecurity for its being repaid.

In this caſe the defendant was *not liable*, by the very terms of the contract, for the repayment of the money. But in the caſe before the court, Mr. *Roſs* is not held as a ſecurity, but is equally bound with the other two for the ſafe delivery of the ſilver, and is therefore clearly liable, by the expreſs terms of his own contract.

*1793.*

F. *N. B.* 120.
*Lilly,* 193.
3 *Bla. Com.*
154.

F. *N. B.* 120.

2 *T. Rep.*
366.

It has been objected, that debt will not lie, becaufe Mr. *Rofs* is only collaterally bound; and *Hard's* cafe was cited and relied on; where it is faid debt will not lie againft the acceptor of a bill of exchange, being but a collateral engagement; but that it will lie againft the drawer, becaufe he is a debtor by the receipt of the money. There is no doubt, the law has been fo determined by an exprefs adjudication in the Exchecquer Chamber, in the 20th *Char.* 2. and that this decifion has been recognized in the cafe of *Brown v. London.* It appears from this cafe, that in the cafe in the Exchecquer, *L. C. Baron Hale*, though he concurred in the opinion, that *indebitatus affumfit* would not lie againft the acceptor of a bill of exchange, could not avoid faying, " The law ought to be otherwife;" and in *Brown v. London,* juftice *Twifden* doubted, and conceived that debt would lie againft the acceptor of a bill of exchange. After this, I hope I may be excufed for obferving, that the reafons and principles of the determination would fcarcely bear the liberal difcuffion of modern times. Where the acceptor of a bill appears to have funds in his hands belonging to the drawer, can it be doubted that an action of debt would lie on the ground of an acknowledgement, that the acceptor had received and held money to the ufe of the plaintiff? Debt will lie where a perfon has paid money to *A.* for the ufe of *B.* by the *cestui que ufe B.* And whether he had funds or not, why might not an action of debt be maintained on the foot of an exprefs *affumfit* to pay a fixed and determinate fum, on behalf of a third perfon?

Nor is it true in fact, that the acceptance of a bill of exchange is a collateral engagement, to pay in default of the drawer. So far from it, that the acceptor is *firft* liable, and muft be firft reforted to, and it is not necessary to fhew notice to *him* of non-payment by any other perfon. And *Afhurft* lays down the fame pofition with *Twifden*, that the acceptor makes himfelf the debtor. In conformity to this idea, it has been adjudged, that, where the holder of a bill received intereft thereon from the drawer, or even a part of the principal, and a written affumption for the balance, the acceptor was not difcharged even in thefe cafes. So little countenanced by modern decifions is the notion, that the acceptor of a

bill is only collaterally bound for the payment of the money.

1793.

Let the law, however, upon this point be as it may ; for it is not neceffary now to determine it ; debt upon an accepted bill is not like the cafe before the court. For Mr. *Rofs* is bound, in the fame manner, in the fame terms, and to all intents and purpofes, as firmly as *Lacaze* and *Mallet*; and we are to fuppofe, after verdict, the contract to be proved as ftated in the declaration. As well might a co-obligor fecurity pretend, that debt would not lie againft him, in conjunction with the principals, becaufe he had not *actually received* the money, and was only fecurity for the payment of it.

Upon this fubject, I take the rule to be, that, wherever the defendant, by the exprefs *terms* of the contract, is only a guarantee on behalf of another, there debt will not lie againft him, being only collaterally bound, but a fpecial action on the cafe. But where he abfolutely engages, and fays *I will pay you*, there debt lies againft him. And no doubt two or three perfons may fo contract, or bind themfelves, to pay a certain and fixed fum, though one *only* receive the confideration, that debt will lie againft them all. This principle is every day recognized by experience, where the contract is in writing ; and there is no reafon why there fhould be a difference, where the contract is by parole, and to be void, in the event of two of them doing a particular act.

2 *L. Ray* 843,

Can it be faid, in this cafe, that Mr. *Rofs* is only guarantee ? Does he engage that if *Lacaze* and *Mallet* do not remit the filver, *he* will do it for them, or be refponfible for the confequences ? By no means. If this were the cafe, I admit he would be only *collaterally* bound, and that debt would not lie againft him. But the contrary is apparent, as we are now to fuppofe the contract to be proved as laid in the declaration : from which it appears, they are all principals, all equally and jointly engaged, one as much as the other. And certainly, they are not the lefs principals, becaufe the *debt* might have been avoided, by two of them complying with the contract.

It has been objected, that fuftaining this fuit in a court of common law will render *lands* liable ; whereas, in the Admiralty, the *perfon* only can be imprifoned.

1793.
This objection, it muſt be owned, is ingenious and refined. But ſurely the different *modes* of execution in the different courts can not deſtroy a ſubſiſting *right of action* in either. *Lanoix*, like every other creditor, ſhould have the utmoſt benefit of his ſuit in that court, in which the law enables him to maintain his action. But the objection proceeds, in fact, upon miſtaken ground. For, as Mr. *Roſs* was never anſwerable in any *other*, than a common law court, it is impoſſible, that bringing a ſuit a-gainſt him, in that court in which alone he was liable to be ſued, can ever be conſidered as changing the *nature* of the ſecurity or contract.

On the part of the plaintiffs in error, it was ſaid, the action would not lie, as the conſideration was paſt or executed, at the time of the promiſe.

There is no neceſſity to go into the nice and hair-breadth diſtinctions to be found in the law-books upon *2 Str. 933.* this point. It is ſufficient to refer to the caſe of *Hayes v. Warren*, and what is ſaid of it in the caſe of *Pillans* *3 Burr. 1671.* *v. Van Mierop.* There juſtice *Wilmot* lays it down as ſetiled, " that where the act is done *at the requeſt* of the perſon promiſing, it will be a ſufficient foundation to graft the promiſe upon," though the conſideration be paſt. And as the *requeſt*, in the caſe before the court, was the ſole motive and foundation for the delivery of the ſilver, there can be no pretence for ſaying, the plaintiffs in error are not bound, though the conſideration might have been *executed*, at the time of entering into the ſtipulation.

I think the judgment of the lower court ſhould be affirmed.

SMITH, J.—Under the aſſignment of general errors, five points are made in behalf of the plaintiff in error, viz.

1. It does not appear by the declaration, that the ſubject matter of the Admiralty ſuit was of Admiralty juriſdiction.

2. That the writing purporting to be a ſtipulation, was not a ſtipulation, nor ſuch a writing, contract, or obligation, as the court of Admiralty had authority to take, and was therefore void.

3. If it was good as a contract, to bind the parties named in it, no action of *debt* would lie on it.

4. It is not sufficiently stated, that the silver coin stated in the declaration was the property of *Lewis Lanoix.*

5. If the subject matter of the Admiralty suit was within the Admiralty jurisdiction, it belonged exclusively to the Admiralty to determine on the writing.

I shall consider the first two points together, because they have such a necessary connexion, that most of the reasons which apply to the first will affect the second point or objection.

The Admiralty court has jurisdiction and power to try all maritime cases. Of every thing done on the water below the low-water mark, the Admiralty court has the sole and absolute jurisdiction. Having therefore the natural jurisdiction of things belonging to the sea; but being restrained by statute (15 *R.* 2d as to wreck *of the sea*) the party must come for a prohibition before sentence : for after pleading, and admitting the jurisdiction of the court below, it would be hard and inconvenient to grant a prohibition.

Indeed if the want of jurisdiction appears on the face of the proceedings, a prohibition may be awarded after, as well as before sentence.

But the party who applies for a prohibition after sentence, must shew a nullity of jurisdiction on the face of the proceedings. Does the want of jurisdiction appear on the face of the Admiralty proceedings in this case ? If a prohibition would not lie, can the plaintiffs in error have the judgment reversed, at this stage ? It is very true, that nothing shall be presumed within the jurisdiction of an *inferior court* ; but what is expressly averred or alledged to be so. But is the court of Admiralty an inferior court ? *Blackstone* mentions it, as one of the four sorts of courts which are of public or general jurisdiction throughout the realm, and not one of the courts of special jurisdiction. It is said to be no court of record, in 3 *Blackstone's Commentaries*, and in many other books. But as the Marshalsea is a court of record, and yet an inferior court, so it does not follow, nor is it any where laid down, that because the court of Admiralty is said not to be a court of record, it is therefore an inferior court. But it is laid down, that, wherever there is a

G

*1793.*

3 *Bla.* 68, 106.

5 *Co.* 107.

4 *Bac.* 249.
*Carth* 12.
*Burr.* 2037.

4 *Bac.* 249.

3 *T. Rep.* 654.

3 *Bla.* 30.

*ib.* 71, 69.

jurifdiction erected with power to fine and imprifon, that is a court of record; and that a court of Admiralty can fine and imprifon for a contempt in face of the court. Though it is faid that this court cannot affefs a fine, becaufe it proceeds according to the courfe of the civil law, and is, therefore, no court of record; yet it is obferved, that it may amerce a defendant for his default in its difcretion, and may iffue execution for the fame of his goods; and (if he has no goods) may arreft his body, within the body of the county. Therefore the court of Admiralty is in the nature of a court of record of an anomalous kind. And although it is faid, that a ftrict recognifance, being an acknowledgment of a debt on record, cannot be taken in a court not of record; yet it operated as a ftipulation by the parties to fubmit to the order of the court. The caution taken by the court of Admiralty, is called a re-cognifance or ftipulation. And in the act of affembly it is called a recognifance, and it is enacted, that, if forfeited, it fhall be recoverable in the Supreme court. The preamble mentions recognifances for the ufe of the Common-wealth, but the enacting claufe fays all recognifances; more-over on a forfeited recognifance the Commonwealth is on-ly a truftee for the profecutor. So here the Commonwealth is a truftee for *Lanoix.* Upon the whole, the Admiralty court, if not ftrictly fpeaking a court of record, cannot be faid to be an *inferior court*, and it fufficiently appears by the declaration, that the fubject matter of the Admi-ralty fuit was of the Admiralty jurifdiction, unlefs that jurifdiction was excluded, becaufe it is faid to be *wreck*, which is exclufively of common law jurifdiction; had there been no additional words in the defcription of the fubject matter, it might have been intended legal wreck, but perhaps not neceffarily even then; for it is held, that the word *covenanted* does not neceffarily import, that it was a contract by *deed.* But here it fufficiently appears from the declaration, that the fubject matter was *not* legal wreck, *of the fea*; becaufe the goods were not caft on fhore by the fea. A *fhip* cannot be *wreck*, if the fhip perifhes; yet if any of the fervants efcape, the law faith, that they fhall have the cuftody of the goods. In the prefent cafe, the captain efcaped, and faved the filver from the *wreck of the fhip.* If the fhip be loft on the fhore, and the goods come to land (fo as it be not legal

wreck) they fhall be delivered to the merchants, paying 1793.
falvage. From whence it is evident, that the words
" faved from the wreck of the fhip," are no more to be
underftood as defcriptive of legal wreck—wreck of the
fea—goods caft on fhore by the fea, than the words, " a
record of a court in Jamaica," were defcriptive of that
fort of record, to which implicit faith is given in *Weft-* Doug. 5.
minfter Hall.

But then it is contended, that the filver, having been
brought on fhore by the captain and on his fuit or libel
in the court of Admiralty, procefs having iffued from
that court, by which the faid filver had been taken into
the cuftody of the marfhall of that court, the court had
exceeded its jurifdiction, and all its acts were *coram non
judice.*

In anfwer. By the law of nations, one nation is bound *Vattel* 2 B.
to perform thofe duties and offices of humanity to ano- 1 Cb. 3 & 4
ther nation (and confequently to the individuals com- fect. p. 213-4.
pofing it) which the fafety and advantage of that fociety
require. Thefe duties of humanity are to be performed *ib. prelim.*
by the ftate towards ftrangers. But if the law of nations fect. 11, p. 6.
antecedent to treaties fhould be fuppofed not exprefly to
inculcate this principle, nor require one nation to per-
form this duty to another, it is enforced by the 18th
article of the treaty of amity and commerce between the
*United States* and *France*.—" If any fhip belonging to
either of the parties, their people or fubjects, fhall within
the dominions of the other, ftrike upon the fands, or be
*wrecked*, or fuffer any other damage, all friendly affiftance
and relief fhall be given to the perfons *fhip-wrecked*, or in
danger. thereof." To fimilar ftipulations in the 16th
article of the treaty with the *United Netherlands*, and the
20th article of the treaty with *Sweden*, thefe words are
added, viz. " and the veffels and effects and merchan-
dizes, or the part of them which fhall have been faved,
or the proceeds of them, if, being perifhable, they fhall
have been fold, being claimed by the mafter or owners,
or their agents, or attornies, fhall be reftored, paying
only reafonable charges, and that which muft be paid in
the fame cafe, by the proper fubjects of the country."—
The article above recited in the treaty with *France* muft
be conftrued to be as extenfive in this inftance, as the

G 2

1793.

enumerated articles in the treaties with the *United Nether-lands* and *Sweden*. At leaft a narrower conftruction would have a very ungracious found in *European* ears, and would be, in fact, contrary to the law of nations, and to the fpirit of that treaty made with us by our firft and beft friend, by whofe friendfhip our national exiftence was preferved.

The nation being then bound by the fpirit of the treaty, and the law of nations to give this affiftance and relief ; how can it give them but through its courts, and what court fo proper to take cognifance of this maritime tranfaction, as the court of Admiralty ? Was not this court therefore bound, upon the demand of the captain, to take charge and cognifance of the filver fo faved ? If the Admiralty be the moft proper court by which this office and duty of humanity, this article of the treaty can be performed, it neceffarily follows, that this court can take ftipulations from the parties to perform all legal *L. Ray* 1286. and neceffary orders and decrees, which it may make in *H. Bla.* 186. the performance of this duty, the exercife of the jurifdiction with which it is for this purpofe neceffarily invefted ; and the common law courts have no right to *H. Bla.* 194. prohibit it from enforcing its fentence. The condition of this ftipulation was as legal and equitable, as was that *Str.* 1137. of the bond in the cafe of *Folkes v. Dominique.* The ftipulation can no more be intended to have been by coercion, than that bond. The parties came voluntarily into the court of Admiralty, and, on entering into the *H. Bla.* 186. ftipulation, obtained the filver, and furely they fhall not *1 Atk.* 630. be permitted to deny the effect of that engagement of which they have reaped the fruits.

In anfwer to the objection, that the Admiralty had no jurifdiction, becaufe the filver was brought on fhore by the captain, after being faved from the wreck of the fhip. *1 Bac.* 624. Where the original matter was done at fea, and other *Ventr.* 173. matters be done at land depending thereon, yet the trial *2 Lev.* 25. fhall be in the court of Admiralty. *Sid.* 320. *1 Com Dig.* Suppofing, but not admitting, that the caution was *277. 1 Bac.* not good as a ftipulation, becaufe the Admiralty had no *625.* jurifdiction of the fubject matter ; is not the tranfaction good as a contract at common law, and binding on the parties voluntarily entering into the writing for a valuable and fufficient confideration ? A contract is defined

to be " an agreement upon sufficient consideration to do or not to do a particular thing." In this transaction are all the ingredients requisite to form a contract; parties, consent, an obligation constituted upon a sufficient consideration. The plaintiffs in error came voluntarily into the court of Admiralty, and before the judge of that court, offered to enter into this agreement, and did enter into it, upon a sufficient consideration, viz. having the silver delivered to them, which was delivered accordingly. As to them, it was perfectly immaterial, in what manner the Admiralty obtained possession of this money. They had no right to demand it. If *F. Hopkinson*, Esq. had not been judge of the Admiralty, had this money been in his possession as a private individual, and he had delivered it to the plaintiffs in error at their request, on their entering into this engagement, it would have been intended, that he had entered into it as agent for *Lanoix*, from whom it would have been presumed that he had sufficient authority, rather than that the agreement should be construed void, after the plaintiffs in error had reaped the advantage of it.

*1793.*

*2 Bla. 4a2.*
*1 Powel Contr. 6.*

*1 Powel Contr. 138. 2 Brown, P. C. 249. & vid. Cowp. 290.*

If his being judge of the Admiralty did not give additional validity to the contract, that circumstance could not make it less binding on the plaintiffs in error, especially as it had been compleatly executed on the other side. The assent of *Lanoix* must be presumed, the contrary not appearing. Can the plaintiffs in error be permitted to deny the authority of *F. H.* as presumed agent of *Lanoix*, at this stage of the business, (having denied that he had any authority in any other capacity) to enter into the contract.

*1 Powel contr 138.*

Even supposing *F. H.* had no authority to make the contract, is it not binding on the plaintiffs in error, they having received the full benefit? Suppose a contract made between a person of full age and an infant, it is voidable at the election of the infant; but as to the person of full age, it absolutely binds: a much stronger case than the present.

*Str. 938.*
*1 Pow. contr. 38, 51.*

As to the objection, that, as to *John Rofs*, the consideration was executed or past, a full answer is given by justice *Wilmot*, in the case of *Pillans* and *Rofe v. Van Mierop* and *Hopkins*. The law on this head has been melting down to common sense in late times.

*Burr. 1671-2.*
*Cro. E. 59.*
*Cro. C. 429.*

G 3

3. But it is contended, that, if it was good as a contract to bind the parties named in it; action of *debt* would not lie on it.

A writ of *debt* properly lieth, where a man oweth another a certain sum of money by obligation or by bargain for a thing sold, or by contract, &c.

Before *Slade's* case, debt was the usual remedy for money due on contract. Debt was brought against executors, by a legatee of the third part of the testator's goods, where the *quantum* had been ascertained by the ordinary. Debt may be brought for a sum capable of being ascertained, though not ascertained at the time of the action brought, and it is not necessary, that the plantiff should recover the exact sum demanded. Debt lies on the judgment of a foreign court, although the judgment is not a specialty, and although given by a court proceeding by the rules of the civil law, and not considered as a court of record.

Debt will not lie by drawee against *acceptor*, of a bill of exchange, because it depends upon a particular custom, and is not founded in contract. It binds him by the custom of merchants, but does not raise a duty. But debt lies against the drawer.

Instrument intended as a statute staple, not being executed according to the act of parliament, was void as a statute staple; but debt was held to lie on it as an obligation at common law. Debt lies on a judgment of nonsuit in an inferior court, and plaintiff below cannot say that the inferior court had not jurisdiction, because he had chosen it, and the defendant below had been forced into it. So here, after the money had been lodged in the Admiralty, and would have remained there, if the plaintiffs in error had not applied to that court for it, and voluntarily entered into this stipulation or (if stipulation it is not to be called) contract, as a condition of having it delivered to them.

Debt lies upon every contract in deed or in law, express or implied. If *A.* gives *B.* money to buy any thing for him, and he doth not buy it. Debt lies by *A.* against *B.* for the money. If *A.* pays the debt of *B.* at his request to be paid upon request, debt lies by *A.* against *B.* So if *A.* delivers money to *B.* to be repaid by such a day, or to be safely kept; or to be paid to another, and

he doth not pay it. If *A.* promifes *B.* 20*l.* to marry his daughter, and he marries her, he fhall have debt againft *A.* Attorney fhall have debt againft his client, for money which he hath paid for his client, for cofts of fuit or to his council, &c. If money be delivered to *A.* to be paid to *B. debt lies by B.* If *A.* retains a tylor to make a garment for his own daughter, debt lies againft *A.* So on a retainer to embroider a gown for his daughter's fervant. So, though the promife be for *the advantage of a ftranger*; as if a man promifes to pay fo much for the education of the children of another. If *A.* promifes 10*l.* to a furgeon for curing another, or to a carpenter to make a houfe for another, he will pay for it, an action of debt or *affumfit* will lie in fuch cafes. Debt lies for every duty created by common law, or by cuftom.

1793.

F.*N*.*B.* 120.
K.
*Ibid*, 121.
2 *Com. Dig.*
63ε.

*Cro. E.* ε8o,

*Ib. Allen*, 6.

*Cro. J.* 521.

2 *Com. Dig.*
638.

But it was adjudged, that if *A.* retains an attorney to profecute the fuit of *B.* debt does not lie for the attorney againft *A.* The reafon of that, *Holt* fays, was that the attorney had a remedy againft the party for whom he acted, notwithftanding he was employed by the defendant; and indeed the authority of that cafe is here fhaken, or rather its application is confined, fo that it cannot weigh againft the above cited, and many other cafes, in which it has been adjudged, that debt will lie againft *A.* on his contract in behalf of *B.* for fervice to be done to *B.* Befides, is there a fingle inftance of an information for money due to the king, which is not in debt, though on fimple contract? The reafon probably is, that againft the king the defendant cannot wage his law.

*Cro. C,* 107,
194.
L. *Ray.* 842.

1 *Roll. Abr.*
593. *C.* 45,
51.

By thefe cafes, and by the following cafes and reafons, an anfwer is given to the objection, that, fuppofing debt would lie againft *Lacaze* and *Mallet,* it would not lie againft *John Rofs,* who was only their furety, and his undertaking was only collateral. It cannot be faid that in this contract his undertaking was collateral. It was fimultaneous with that of *Lacaze* and *Mallet,* made at the fame inftant. It was a joint contract. It was one tranfaction by them all, before the money was delivered by the Admiralty.

1 *Powel Contr.*
349—5o.

In the cafe of *Machen* and *Fortune v. Staynton,* the effect of an agreement is carried further than the *letter* of it, even againft a furety; which is contrary to the opinion of *Buller* in *Stratton v. Raftall.*

1 *Brown's P.*
*C.* 87.
2 *T. Rep.*
370.

G 4

It is laid down, that *A.* shall have *debt* against *B.* who becometh pledge for another, upon his promise to pay the money, without any writing made thereof.

Under this head it is contended, that no action would lie against *John Rofs* the surety, who never in fact received any of the money; and the cafe of *Stratton v. Rastall* is cited in support of this position. But (admitting that cafe to be law) it is clearly diftinguishable from the present. There the plaintiff, by his own act, loft the benefit of the exprefs contract. By his neglect, it was relinquished, and became extinguished; and the surety, not having received any part of the money, was not liable upon the implied contract, which could be supported only upon equitable principles. There the defendant was only surety for the payment of the annuity; not for the repayment of the confideration money, for which the action was brought; but in the prefent inftance, the exprefs contract of the defendants was, that the money should be delivered to *Lanoix* or the right owner. No act was done by the other party to relinquish or nullify this exprefs contract, for the nonperformance of which the prefent action was brought. On this point let me repeat the words of *Afhurst*, " I have fo great a veneration for the law, as to fuppofe, that nothing can be law, which is not founded in common fenfe, or common honefty."

4. It is alledged, that it is not fufficiently ftated in the declaration, that the filver was the property of *Louis Lanoix.* That the truft of *Lacaze* and *Mallet* was for remitting the money to *Lanoix,* or the right owner, and the declaration does not ftate, that they did not deliver it to the right owner, which it ought to have done.— Thus, it is faid, every word of the declaration may be true, and yet the truft performed.

Anfwer. This fuit is in the name of the Commonwealth as truftee for *L. Lanoix* or the right owner. It was not neceffary to ftate more particularly, that the filver was the property of *L. Lanoix.* If it had not been his property, and the defendants had delivered it to the right owner, they ought to have pleaded that:— In an action on a promiffory note payable to *A.* or order, or on a bond payable to *A.* or affigns, brought by the payee, does he ever aver that the defendant did not

pay the fame to his order or affigns? If affigned, that muft come on the other fide.

1793.

Were fuch averment neceffary, the want of it is cured by the verdict. Many inaccuracies and omiffions which would be fatal, if early obferved, are cured by a fubfequent verdict. For if a declaration or plea omits to ftate fome particular circumftance, without proving of which at the trial, it is impoffible to fupport the action or defence, this omiffion fhall be cured by verdict. In other words, the general rule is, that where a thing is fo effentially neceffary to be proved, that if it had not been given in evidence, the jury could not have given fuch a verdict, there, though it is not ftated in the declaration, yet this defect fhall be aided by the verdict. The authorities which fupport this principle, alfo fubftantially anfwer the firft objection.

*L. Ray* 1061.
*Str.* 931.

3 *Bla.* 394.

*L. Ray* 109.
12 *Mod.* 510.
*Carth.* 389.
*Hard.* 157.
*Buller* 2020.
*Buller* 167.
*Cowp.* 825.
*Doug.* 658.

5. It is contended, that, if the fubject matter of the Admiralty fuit was within the Admiralty jurifdiction, it belonged to the Admiralty exclufively to determine on the writing,

I fhall confider this objection, 1. Suppofing the writing to be a ftipulation which the Admiralty had authority to take; and, 2. Suppofing it to be no ftipulation becaufe the Admiralty had no authority to take one, I will confider it as a contract at common law.

In *Brymer v. Atkins*, lord *Loughborough* fays, that, " Operating as a ftipulation, execution of it belongs to that jurifdiction to which the parties have agreed to fubmit."

*H. Bla.* 109.

That all proceedings legally commenced in any court to which *the parties have agreed to fubmit*, may be more properly carried into execution by that court than by any other, and that no fuperior court ought to prohibit the inferior court from carrying fuch proceedings into execution, unlefs when authority is exprefsly given to the fuperior court for this purpofe, feems not to admit of difpute, when the party intitled to the effect of thofe proceedings applies to the inferior court to have them carried into execution; but does it follow, that, if the party intitled to fuch effect choofes to apply to a fuperior court of common law and general jurifdiction, the fuperior court is precluded from carrying into effect any of the acts of the inferior court? Does this follow efpecially,

1793.

where the party applying had been forced into the inferior court? If the party who had chosen the Admiralty jurisdiction, in which to institute a suit, should be confined to that court to the conclusion of the transaction, does it follow, that the other party, who had been forced into it, should be thereby deprived of his election of applying to the courts of common law, and of trial by jury, to carry into effect a stipulation taken in the cause, by the Admiralty, and so deprived without the intervention of positive law, or any solemnly adjudged case? I think the affirmative cannot be supported. It is even admitted, that debt lies in the court of Common Pleas on judgment on *scire facias* on a recognifance in the court of King's Bench.

*2 Com. Dig. 634, Dy. 206a. in marg.*

Bail bonds must be sued in the same court in which the bail was given, because the statute directing the assignment of them gives the court, after such bonds are put in suit, an equitable jurisdiction to stay proceedings, and to let the defendant in to try the merits of the original action upon reasonable terms; which jurisdiction cannot be exercised unless the proceedings on the bail bond, and the original action were in the same court. But even in this case, upon special circumstances, as if the defendant lives out of the jurisdiction, the bail bond may be sued in another court.

*Barnes 92, Bla. 877, Burr. 1923, 642. 3 Wils. 348.*

*Burr. 642.*

Debt lies in the King's Bench upon a recognifance taken in Chancery, although the plaintiff had before sued a *scire facias* in Chancery on it, obtained judgment there, and sued an *elegit*.

*Cro. E. 608, 817.*

Debt lies in the court of Common Pleas, on a judgment in the Mayor's court at *Guildhall*, on a recognifance taken before the mayor, &c. And lord *Anderfon* said, admit the recognifance was not well taken, yet because that, on the *scire facias* upon it, the defendant did not take advantage of it, he shall be bound by his said admiffion.

*1 Leon. 284. 2 Com. Dig. 635. Dy. 219.*

Debt lies in the King's Bench on a judgment of nonsuit in an inferior court, and it is not neceffary that the now plaintiff should aver, that the inferior court, into which he had been forced, had jurisdiction of the fubject matter of the original action.

*1 Wils. 316, Cro. E. 96.*

Debt lies in the Marfhalfea, or any other court (of record as stated by *Comyns*) on a judgment in the court of Common Pleas or King's Bench.

*1 Salk. 209. 2 Com. Dig. 634.*

Debt lies in the court of King's Bench on a recogni- *1793.*
fance (of bail it was here) taken in the court of Common
Pleas. And on judgment on *fcire facias* on recogni- 6 *Mod.* 132,
fance in the King's Bench, debt lies in the court of Com- 7 *Ven.* 349,
mon Pleas. 2 *Com, Dig* 34
*Dy.* 306, *in*

Debt upon a judgment for debt or damages in a court *marg.*
of *London*, by fpecial cuftom lies in the court of King's 2 *Com. Dig,*
Bench or Common Pleas, though the original action 600, *l.* 45.
could not have been brought there.

Bond taken by the Admiralty to perform their orders, 1 *Keb.* 88.
it fhould be fued at common law. It is true, the book
in which this is ftated, is not of much authority; but is
there any adjudged cafe contrary, or is this cafe contra-
dicted by any judge? It is faid *arguendo*, that a ftrict *H. Bla.* 174.
law recognifance, upon which a *fcire facias*, or action
of *debt*, or an *extent* might be brought, could not be ta-
ken by a court not of record. But the court only fays,
" that execution of it belongs to that court, and that *ib.* 189.
jurifdiction, to which the parties have agreed to fubmit."
Befides this was in the cafe of *prize*, in which the Ad-
miralty has the fole and exclufive jurifdiction. 3 *T.Rep.*270.

In anfwer to the many inftances of actions being
brought in different courts on judgments of other courts,
it is faid, that is becaufe all fuch fuits may be removed
thither before judgment. This anfwer is not fufficient.
An action cannot be removed from the court of King's
Bench to the court of Common Pleas, nor from a foreign
court to either, nor from either to the Marfhalfea.

It is alfo faid, that if the Admiralty had authority to
take fuch a ftipulation, it had alfo authority to enforce
it; that there is no inftance of any fuch action having
ever been brought in the courts of common law, which
is an argument that none will lie.

That every court has authority to enforce its own
decrees and acts, is a pofition fupported by reafon, law,
and practice; but it does not follow that it has the ex-
clufive authority. The contrary is evident from the cafes
cited on this head. Indeed as this ftipulation was to
indemnify the judge and officers of the Admiralty, it
would have been judging in his own caufe, had he en-
forced it in that court.

To fay nothing of the prohibitory act of affembly, it 1 *St. L.* 33.
is not too ftrong an expreffion to fay, that even an act *Hob.* 87. *Holt* 396.

1793.

of the legiflature giving this power to a judge, would be void.

*Salk* 397,607
*Str.* 1173.
*Hardr.* 503.
*F.N.B.* 7B.
32E 4*Inft.*17
*Plowd.*244a.
4. *Bac. abr.*
203.

Befides, the Commonwealth may fue in what court it pleafes. The king may bring a *quare impedit* in the King's Bench.

No authority was cited in fupport of the pofition, that becaufe no fuch action has ever been brought, therefore none will lie. *Lit.* fect. 108, *Co. Lit.* 81, and *Black.* 309, are ufually cited in fupport of this argument.

Lord C. J. *Holt*, was fufficiently attached to form, and leaned enough to formal objections ; fo far at leaft, as appeared neceffary to eftablifh certainty and precifion in practice ; yet we find, that when it became his duty to apply general principles to new occafions, his great, comprehenfive, acute, pervading and intuitive mind, was not fettered by form, efpecially when an adherence

*Cowp.* 276.

to it tended to entangle juftice in a net of law, and a departure from it did not weaken any of thofe fundamental principles, upon which the fecurity of property depends, and which ought therefore to be holden facred. He fays

*L Ray.*, 957,
6 *Mod.* 56,

" it is an argument, when founded on reafon, but none when it is againft reafon." He confiders *Littleton's* opinion, and fays, " it has no great force. If it had, it would have been deftructive of the many new actions, which are at this day held to be good law." And he cites many inftances of new actions grounded on the common reafon, and the antient juftice of the law. And

2 *Wils.* 146.
See *Hargr.*
*Co. Lit.* 81b.

lord *Camden* fays, " I wifh never to hear this objection again." And *Littleton* himfelf adds, " *fed quære de hoc.*" *Holt* further fays, " We muft not be frighted when a matter of property comes before us, by faying, it belongs to

*L.Ray.*957.
6 *Mod.* 56.

(another jurifdiction) the parliament, we muft exert the queen's (the Commonwealth's) jurifdiction."

*L. Ray*, 957.

If, therefore, we confider, that the law does not confift in particular inftances or precedents, but on the reafon of the law, we fhould not be warranted by the reafon of the law, any more than we are by adjudged cafes, in holding, that no action would lie, in the prefent inftance, at common law ; or that an action of *debt* would not lie at the fuit of the Commonwealth, fuppofing the writing to be a ftipulation.

If it fhould not be confidered as a ftipulation, but a contract at common law, I think, there cannot be a doubt,

for the reasons given under the third head, but that an 　1793. action of debt is maintainable in a court of common law. We cannot reverse the judgment, unless we are clear, that such action would *not* lie.

Had I any doubts as to the form of this action, I would say with lord *Mansfield*, that judges ought to lean 　*Burr.* 1243. against objections, which have no relation to the real merits, much more when the plaintiff is clearly entitled to re- 　*H. Bla.* 241. cover on the merits, and must recover in another action. 　*Burr.* 2588.

I am, for these reasons, of opinion, that judgment be affirmed.

ADDISON, J. Though the state of Pennsylvania, by its officers of the Admiralty, had possession of this coin, yet, having prescribed forms and limits to the exercise of its sovereignty, its officers can execute only those portions of power, and in that manner, which the law prescribes to them. The court of Admiralty, therefore, though the agents of the state, may be supposed to have taken, exercised, and surrendered the possession of this coin, by authority, without authority, or against authority; and may therefore be considered as acting judicially within their jurisdiction, or as innocent possessors, or as trespassers. Even trespassers may take a promise, from a third person, to restore to its true owner, the property, which is the subject of the trespass; and this promise may bind the person who makes it; for the restitution is a lawful act. Innocent purchasers may surely do so, and such promise, to them, will be free from all objection. But such promise made judicially, to a sovereign state, through its officers, acting judicially upon a subject within their jurisdiction, and made the condition of their parting with a possession, which they acquired, held, and surrendered, judicially, by authority, and due form of law, must be considered as binding with peculiar force.

As the principles of our government hardly warrant a disposition to indulge the prerogative of administering justice, in one form, to the sovereign, and in another, to the citizen; but seem to require the application of one rule to all; so neither, without some reason of policy or justice, should a promise made to a state, acting in its judicial capacity without authority, be held less binding, than if made to a citizen acting as a trespasser.

1793.

In my examination of the errors affigned on this record, and the arguments thereon, I have been led to arrange them in four points of view.

1. Is a ftipulation taken regularly and judicially, by the court of Admiralty, acting on a fubject within its jurifdiction, a fufficient ground of an action of debt, in a court of common law ?

2. Is the ftipulation ftated on this record to be confidered here, as taken regularly and judicially, by the court of Admiralty, acting on a fubject within its jurifdiction ?

3. Is this ftipulation independent of all judicial circumftances, fuch a contract, as will maintain an action of debt, againft *Lacaze, Mallet* and *Rofs ?*

4. Is a breach of this ftipulation fufficiently fet forth in the declaration ?

Thefe queftions feem to involve all the difputed points in this cafe.

1. Is a ftipulation, taken regularly and judicially, by the court of Admiralty, acting on a fubject within its jurifdiction, a fufficient ground of an action of debt in a court of common law ?

*Vinn. Juft.*
*Inft.* 553-4.

A ftipulation, in the Roman law, is a promife, conceived in a fet form of words, which binding without any writing or confideration, was frequently annexed to contracts, which without it, would not be binding, to render them fo ; or to contracts of themfelves binding, to render them yet more folemn.* Stipulations were either voluntary, when entered into from the mere confent of the parties, or neceffary, when interpofed by judicial authority, either in the courfe of a fuit, to fecure its effect, or without fuit, to accomplifh a fummary remedy. When any thing was ftipulated to be done, or not done, it was ufual to annex a penalty, which, in cafe of a breach of the ftipulation, might be the meafure of the damages, and prevent any difpute, trial, or afcertainment. And, in all kinds of obligations, there might be *fidejuffors* or fureties, whofe obligation might alfo precede or follow that of the principal ; but,

*ib.* 571-4.

*ib.* 564-5.

*ib.* 594-9.

* In the Roman law, the ftipulator was the perfon requiring the promife : with us, the perfon promifing is ufually called the ftipulator. *Wood's Inft. Civ. Law,* 220-4.

by a regulation introduced by *Justinian*, they were not to be called on till after the principal, if he was folvent and to be found: yet this feems not to have extended to ftipulations by judicial authority, nor perhaps to mercantile tranfactions; and, in all tranfactions, to which it did extend, it became ufual to infift, that the *fidejuffor* fhould exprefsly renounce this benefit.

Stipulations, fo frequent in the civil law, were naturally adopted by a court, whofe principles and proceedings were, in a great meafure, regulated by that law. Analogous to recognifance of bail, at common law, ftipulations were ufed, by the court of Admiralty, to enforce compliance with its procefs and decrees. When the Admiralty went farther than mere analogy, and allowing its ftipulations the force of a recognifance in a court of record, endeavoured to proceed on them as fuch, the courts of common law prohibited them, and would not fuffer this court of fpecial jurifdiction, to affume to itfelf the authority of a court of record, and bind the eftates of the fubjects of the realm. At laft however, from the neceffity of allowing the Admiralty to fupport its jurifdiction, and enforce its authority, the courts of common law, though they held, that a ftrict recognifance, an acknowledgement of a debt on record cannot be taken in the Admiralty, a court not of record; yet a ftipulation, though in the form of a recognifance, having none of its attributes, nor to be proceeded on as fuch, nor like it, in its confequences, might be taken there, and that, as the courts of common law will, in a fummary manner, enforce compliance with any rule incidentally made in the courfe of their proceedings (a rule to ftay wafte, for inftance, in the proceeding in ejectment) fo a court of Admiralty, acting judicially, on a fubject within its jurifdiction, may, as a proper and convenient mean of executing its authority, adopt and enforce a ftipulation, which being an undertaking of the party, to fubmit himfelf to the authority of the court, execution on it belongs to that court, and that jurifdiction, to which he has exprefsly agreed to fubmit.

The motions for prohibitions, to the proceedings of the court of Admiralty, on ftipulations, feem to have been made, on the ground, that they were proceeding on a contract made at land, and the prohibitions, when

*Margin notes:*
1793.

3 *Comm.* 108, 109, 291.

*H. Bla.* 188.

*Ld. Ray.* 225, 235, 1285. *H. Bla.* 185, 189. 3 *T. Rep.* 329, 343. *Stat.* 13. *R.* 2, *c.* 5, 15, *R.* 2, *c.* 3.

*Cafes laft cited* 1 *Bac. abr.* 627 *Carth.* 26. *Hardr.* 473, *denied* 2 *Sir.* 890.

granted, feem to have been granted on that ground, as well as on their ufurping the appearance and effect of a recognifance of record. But, notwithstanding the prohibitions, I have not been able to difcover any fuit at common law on a ftipulation. *Pollexfen*, arguing, in the court of King's Bench, againft a prohibition, fays, "It is not new, that things arifing on land may be fued for in the Admiralty, for fo it is in all cafes of ftipulations." *Dr. Lane*, an eminent civilian, arguing, in the fame court, againft a motion for a prohibition to the proceedings of the Admiralty on a ftipulation, by part owners, for the fafe return of a fhip,* ftates, that, " if fuch prohibition were granted, the court of Admiralty would fignify nothing, becaufe moft of their proceedings are, by taking fuch ftipulations, and there could be no remedy on them at common law." This reafoning feems to have prevailed. The counfel arguing, in the court of Common Pleas, for the demurrer to a declaration in prohibition to proceedings in the Admiralty on a ftipulation, feem to ftate it as eftablifhed by the cafes cited on the other fide, that land cannot be affected, nor an action of debt be brought on a ftipulation, like the one now in queftion, with a penalty to the king. In the fame cafe, lord *Loughborough* fays, that fuch a ftipulation has none of the attributes of a recognifance, cannot be proceeded on as fuch, and is not like it, in its confequences. In argument, in the King's Bench, againft a prohibition, the counfel ftate, that in an action of law, by the owners of a fhip taken as prize, againft the captors (the court of Admiralty having decreed, that the fhip was not a prize) lord *Mansfield* nonfuited the plaintiff; becaufe the queftion arofe out of a prize caufe, and courts of Admiralty ought to enforce their own decrees. In the court of Common Pleas of *Philadelphia*, in a cafe of the fame kind, prefident *Shippen* ufes almoft the fame expreffions, in giving the opinion of the court, that the action could not be fuftained; becaufe, to fuftain it, would be to carry the decree of the court of Admiralty

*Margin notes:* 1793. 3 *Mod.* 245. 2 *Ld. Ray.* 1285. *H.Bla.*185. 3 *T.Rep.* 333.

---

* This was the point before the court in *Carth.* 26, and *Hardr.* 473. and though the Admiralty jurifdiction was there denied, it feems to have been allowed here, and more pointedly in 2 *St.* 890: fo it finally prevailed.

into execution, which (the Admiralty being the proper judicature to carry into effect its own decrees,) he declares, the court of Common Pleas had no authority to do. The principles of this decision are fully explained in the cafe of *Le Caux v Eden.* Such fuit could not be *Doug. 572,* fupported becaufe it arofe out of the queftion, " prize *597.* or not prize," which, with all its confequences, depending on the rights of war, part of the law of nations, belongs entirely and exclufively to the courts of Admiralty ; and as the courts of common law cannot, at all, enquire into it, they can receive no evidence of it, not even the evidence of the decree of the competent court. In this cafe of *Le Caux v. Eden,* the counfel for the plaintiff contended, with great earneftnefs and warmth, for the benefit of a common law redrefs. But no fuit of this kind having ever been brought was a ftrong argument, that none could be fupported, and as the Admiralty had full authority to remedy an unlawful capture, and all its confequences, the court thought, it would be extremely inconvenient to withdraw this queftion or any of its incidents, from a jurifdiction proceeding on a general law of all nations, and in a fummary and equitable manner, and bring it before a jurifdiction governed by a limited municipal law, and proceeding with a formality and mode of proof ill fuited to the nature of the fubject. If captors were liable to a fuit at common law, by every perfon affected by the capture, none would venture to take a prize. And if foreigners had no remedy, for injuries done to their property, under colour of prize, but from fuits in our courts of municipal law, to the principles and effects of which they are ftrangers, mutual confidence between nations would be deftroyed, and, in a war between any two nations, all others would protect themfelves by force, and compel by arms that adminiftration of juftice, to which they are reciprocally entitled.

This collection of opinions and decifions, refpecting the court of Admiralty, fhews the extreme caution, with which courts of common law interfere with the jurifdiction of that court ; and fhews, that its jurifdiction, *Hardr, 473.* in cafes of ftipulation, though, at firft interrupted and 2 *L. Ray,* denied, was, at laft acknowledged. The conclufion to 1285.
2 *Str,* 890.

H

be drawn from this is, that every argument, which fup-
ports its jurifdiction, bears againft the jurifdiction of
the courts of common law.

But it may be faid, that the doctrine, refpecting the
prize court of Admiralty, is not conclufive, when ap-
plied to the Inftance court, with which the courts of
common law have, in many cafes, a concurrent jurifdic-
tion.   It will, however, be obferved, that, of the autho-
rities cited, many are in the Inftance court, and that
there, the reafons of inconvenience, in all, have great
influence.   The fea, if I may fo exprefs it, is the *terri-
tory* of all nations ; and as tranfactions are to be go-
verned by the *lex loci*, things happening on it are to be
governed by the law of nations, rather than any muni-
cipal law.   Therefore courts of Admiralty are inftituted
in all ftates, and governed by the fame code of laws.——
But why inftitute them, if every incidental occurrence
may be drawn into a court of municipal law ?   Foreign-
ers may frequently be affected by things happening on
the fea, the highway of the world, and have like reafons
to demand the maritime mode of inveftigation in other
cafes, as in the cafe of prize.   Their fituation may not
admit delay.   The mode of proof and trial, by the
municipal law, framed for internal tranfactions, may,
with refpect to maritime affairs, be impracticable or in-
convenient, and will generally be unknown.   And it
may feem hard, after commencing, fupporting, and con-
cluding a fuit in the Admiralty, to be drawn into a court
of municipal law, for the attainment of its object, or an
enquiry whether it has been attained or not.   If the
court of Admiralty have jurifdiction over the principal
matter, it will alfo have jurifdiction over the incidental,
and may enforce compliance with the ftipulation.   If it
had no jurifdiction over the principal matter, any inci-
dental judicial act is void.   In any cafe, the application
to a court of common law feems to be, at leaft, unne-
ceffary, and may be oppreffive.   It appears to be new,
and, if its tendency be improper, it ought not to be
countenanced.

But here it is urged, that application to a court of
common law was neceffary to obtain the advantage
of this ftipulation ; for one of its conditions is to in-
demnify the judge and officers of the Admiralty, and

unlefs the courts of common law will enforce this, he 1793. muft judge in his own caufe, which is impoffible. Now, although the breach of this condition is not averred, and this cannot be a fuit on it, yet the judge of Admiralty had an intereft in this fuit, if the delivery of the money to *Lacaze* and *Mallet* was not a judicial act : for, if it was not, he was anfwerable for it ; and if he could oblige them to pay it over to *Lanoix,* he would fave himfelf.

It may alfo be faid, that to remit the party for remedy on this ftipulation, to the court in which it was taken, may be to deny all remedy ; for that court no longer exifts, and its authority is vefted in the courts of the *United States.*

Here then, it is alledged, is a reafonable, if not a neceffary, ground for a fuit at common law on this ftipulation. And where there is a reafonable and neceffary ground for a fuit at common law, why fhould not an action of debt lie on a ftipulation, as well as on a judgment in a foreign court ? There is no adjudged cafe to the contrary ; and the boundaries of actions are every day enlarging. Such an action of debt, it is true, will not lie on it, as on a recognifance or judgment in a court of record. It is not of fuch folemnity, as to be anfwered by the plea of *nul tiel record* ; nor is it perhaps of fuch abfolute verity, as to be conclufive at the time, and not to be denied or examined. Yet it may be faid, that, though it be not an acknowledgment of a debt on record, it is an acknowledgment of a debt, which, if for an honeft and good confideration, may be recovered at law. A recognifance of bail, in any action in any court, though an incidental tranfaction, may yet be the ground of another action in another court. And by an act of affembly, paffed fince this ftipulation was taken, forfeit- 2 *St. L.* 167. ed recognifances in the Admiralty, or Admiralty feffions, fhall be fued for in the Supreme court.

But, fuppofing this reafoning to lead to a conclufion, that a ftipulation regularly and judicially taken by the court of Admiralty, acting on a fubject within its jurif-diction, may be a good ground of an action of debt at common law ; we muft, before we decide the cafe before us, difcufs the fecond queftion.

*H* 2

1793.    2. Is the ftipulation ftated on this record to be confidered here as taken regularly and judicially, by the court of Admiralty, acting on a fubject within its jurifdiction.

It is faid, that it is not ; for the fubject was wreck, of which the Admiralty had not jurifdiction.

*Wreck*, or *wreck of the fea* in the ftrict technical fenfe of wrecked goods, which the fea cafts upon land, is excluded from Admiralty jurifdiction. But there is another more lax fenfe, in which it is ufed, for *fhip wreck*, or wrecked goods in general : and, in this fenfe, it includes *jetfam*, *flotfam*, and *ligan*, which are fubjects of Admiralty jurifdiction. The word *covenant*, though commonly, does not neceffarily, import a contract by deed. The word *legacy* has been held to extend to land. So the word *wreck*, though properly meaning wrecked goods caft on land, has been ufed judicially and by lawyers, for wrecked goods at fea. In the judge's report of a trial in trover, for part of the cargo of a fhip foundered, and *never heard of*, the *fhip* and goods are mentioned as a wreck. Lord *Hale*, in a treatife *De Jure Maris*, fays, " of wreck of the fea there are two kinds : 1, fuch as is called properly fo, goods caft upon the land on fhore ; 2. improper, for goods that are a kind of fea waifs, or ftray, flotfon, jetfon, and lagon."

If on fuch occafions, and by fuch perfons, the word *wreck* has been ufed in this general fenfe, fhall we wonder, if *Lacaze* and *Mallet*, in their petition to have this money delivered to them, fhould ufe it in the fame fenfe, and that it fhould have crept, by way of parenthefis, into the order for the delivery of the money to them? It is not fhewn to us in the libel of the mafter, on which the court took jurifdiction, nor in any other part of this record. And, even where it is ufed, it is evident, that it is not ufed in the proper, but in the improper fenfe. It is wreck of the *fhip*, and not wreck of the *fea*. I cannot therefore bring myfelf to fay, that this record exprefsly excludes the jurifdiction of the Admiralty ; for it does not fo manifeftly appear. Is it then neceffary, that it exprefsly and fufficiently ftate this jurifdiction ?

It is faid, that this is neceffary ; for the court of Admiralty is not a court of record. And it is faid, that this is not neceffary ; for the court of Admiralty is not an inferior court, and, in fuperior courts, the jurifdiction is prefumed.

1 *Powel contr.* 244. 4 *Burr.* 2035—9. 1 *Burr.* 271. 3 5 *T. Rep.* 720 —1.

*Hamilton v. Davis.* 3 *Burr.* 2732.

*C vii. Hargr. Law Tracts* 37.

Many inferior courts are courts of record ; and though the court of Admiralty be not a court of record, it may not, therefore, be an inferior court.

The equity court of Chancery is not a court of record ; and furely, it is not an inferior court. In this refpect, the court of Admiralty is not an inferior court, that its fentence, on fubjects within its jurifdiction, is not examinable in the fuperior courts of common law. But, in every refpect, it is not fuch a fuperior court, as, like the courts of *Weflminfter Hall*, its jurifdiction is general and prefumed, without averment. As to fubject and place it is limited: and every libel in the Admiralty muft lay the caufe of fuit to be within the maritime jurifdiction, and fo as it may appear to the courts of common law to be fo indeed ; " for a man is not to fue in the Admiralty becaufe it is a fhip." *2L.Ray12°5, 1452. 1L.Ray,272. Hob. 212. Doug. 615.*

But it is contended, that the jurifdiction of the Admiralty does appear ; for this is a cafe of falvage. Together with the fhip, the wages of the mariners were loft, and they contributed to the recovery and fafety of the goods, as any other individuals, and upon the fame terms. It is contended alfo, that it is the law of *France*, and for the mutual convenience of all nations, that, in all fuch cafes, the property faved fhall be depofited in the Admiralty, fubject to its jurifdiction ; and that, the parties being citizens of *France*, it was expected on both fides, that this fhould be done, and that a decent refpect for the laws of *France*, and regard for general convenience ought to fanction this jurifdiction. I feel no inclination to oppofe this reafoning ; and I think this was a proper exercife of Admiralty jurifdiction, warranted by the cuftom of *France* and other nations, advantageous to the parties concerned, and neceffary in all maritime countries, for the protection of foreign property : and I think, therefore, that this jurifdiction ought not to be difputed with the Admiralty, and that it ought to be confidered as acting judicially in the exercife of it. *Molloy. B. 2, C. 2, §16.*

If, together with jurifdiction, there muft alfo be an averment of jurifdiction, I cannot think this fufficiently implied in the recital of the order of the Admiralty to deliver the coin to *Lacaze* and *Mallet*, on their giving caution, " agreeably to the practice and ufage of that

H 3

court, and the laws of this ftate;" thefe words referring to the manner of the caution, not the matter of the fuit. And, in fome cafes, averments, though falfe and not traverfable, as that a plaintiff in the Exchecquer is a king's farmer, muft be made. So, to found an action at law, on a judicial proceeding in the Admiralty, an averment may be neceffary, in the declaration as in the libel, that the fubject was within the jurifdiction of the Admiralty. For, though it be a rule, that, if a party, having an opportunity to object to the jurifdiction of the Admiralty, lies by till after fentence againft him; the court of common law will not, in order to prohibit the Admiralty, look out of the proceedings, to find irregularity, and will prefume jurifdiction unlefs want of it appear on the proceedings; yet this is in the cafe of motions for prohibition, where the other party has gone on in the Admiralty under an *apparent jurifdiction*, as on a contract laid in the libel to have been made *at fea*; and then the court of common law may refufe to interfere, in oppofition to a jurifdiction, to which the party has fubmitted. But if this queftion come before a court of common law, not on a motion for prohibition, but on a fuit inftituted on fome of the Admiralty proceedings, will the fame reafons which induce a court of common law not to ftop the proceedings of the Admiralty, induce it to enforce them? Becaufe it permits, muft it authorife them? Courts, not favouring negligence, will perhaps overlook an objection, which appears not on their record, when they would not overlook it in their record, when they were required to act on it, and make it a ground of their proceeding: for not to correct an irregularity, differs from fupporting it. In an action of debt on a judgment of nonfuit, in an inferior court, it would feem to be neceffary, to aver, in the declaration, that the nonfuit was given at a court held within its jurifdiction; and this is fufficient, though the proceedings of the plaintiff below have been illegal from beginning to end. But it might have been doubted perhaps, whether this averment would have been fufficient, if the plaintiff below proceeding illegally had obtained judgment, and brought an action of debt on it. Much may, in fuch cafe depend on the queftion, who urges the objection? Did he occafion, or could he have refifted the irregu-

1793.

9 *Co.Rep* 47a.
6 *Co Rep*.38b.
*Syftem of Pleading* 184.

12 *Co*. 77, 78.
4 *Burr.* 7035
-9. 2 *T. Rep.*
475,649,&c.

4 *Burr.* 2035.

5 *T.Rep.*348.

*Murray v. Wilfon.*
1 *Wilf.* 316.

larity in the inferior court, or was he affected by it there? In an action against an officer of an inferior court, for an escape, the court of King's Bench held, that, suppofing the plaint below to be erroneous, the officer could juftify the arreft, and fhall not, in this collateral action fay, that the plaintiff could not have had the effect of his fuit below; nor fhall he, after verdict, when every thing neceffary is prefumed proved at the trial, object, that the declaration alledges not, in what manner the defendant below was indebted, nor fhews, that it was a debt of which the inferior court had jurifdiction.

*1793.*

*Bull v. Stew-
ard, 1 Wils.
355. 2 Wils. 5.*

In what fituation then were *Lacaze* and *Mallet*, in the court of Admiralty. They were neither plaintiffs nor defendants, they were neither the perfons libelling, nor the perfons libelled againft. They were not the owners of the money, nor could they have been confidered as the agents of the owner authorifed to receive it. For if they had either been the owners or authorifed agents, fuch a ftipulation would not have been neceffary. It was not neceffary from an owner, for he has a right to his money, without giving caution. It was not neceffary from an authorifed agent; for caution was a matter that lay only between the agents and the owner, and no other than the owner had a right to require caution, which he did not choofe to require, and thus bring fureties into danger.

But whatever they were, it will be faid, fhall they, trufted at their own requeft, difpute the authority under which they acted, when they are called to an account for mifconduct, and the perfon injured joins in the demand? And after the proceedings in the Admiralty, and defence and verdict at common law, fhall enquiry be made, as to the Admiralty jurifdiction? Who fhall difpute the jurifdiction of the Admiralty over this money? The owner. Were *Lacaze* and *Mallet* the agents of the owner? They might then, inftead of allowing the jurifdiction, in his name, have applied for a prohibition. They cannot, after ftating themfelves to be, now deny that they were, the agents of the owner? If they admitted the jurifdiction to give this money, and take this ftipulation, to permit them to deny it, when they are called to account, and the perfon injured applies to

*H 4*

1793.

the ſtipulation for a remedy, would, it may be ſaid, ſhock the plaineſt principles of honeſty, and break the bands of mutual confidence.

There is weight in this reaſoning, and ſurely the abſurdity would be ſhocking, if no remedy exiſted on this ſtipulation. But the preſent queſtion is, not whether any remedy exiſts on the ſtipulation, but whether the ſtipulation is now to be conſidered as regularly and judicially taken, on a ſubject within the juriſdiction of the court of Admiralty. If there were in the information an averment of juriſdiction, it might be improper, at this ſtage of the buſineſs, to ſuffer it to be denied. Even though there be no averment, it may be contended, that this would be improper, unleſs want of juriſdiction appear on the face of the proceedings. If this appear, it is never too late to object to it. My doubt is, that a want of juriſdiction does ſo appear.

I have already acquieſced in the juriſdiction of the Admiralty, in taking this money into its poſſeſſion, for ſafe cuſtody, and for examination and deciſion of all claims to it. So far I admit the acts of this court were judicial. But I doubt whether the duty of the court extended beyond the preſervation of the money, and the dilivery of it to the owner or his agent. I think it extended not to the tranſmiſſion of it to the owner's place of abode, or into the owner's hands, unleſs he came to that court, or its officer, to receive it. This ſtipulation was taken, that *Lacaze* and *Mallet* ſhould remit the money to *Lanoix*, and indemnify the judge and officers againſt his, and every other claim. It was the duty of *Lanoix* to come to the judge of Admiralty, for the money; it was not the duty of the judge of Admiralty to remit it to him. If *Lacaze* and *Mallet* were the authoriſed agents of the owner of the money, it was not the duty of the judge to take ſecurity for the performance of their agency. If they were neither agents nor owners, it was not the duty of the judge to deliver the money to them. Can a judge be conſidered as acting judicially, when he is doing what it is not his duty to do ? Can a judge need an indemnification for doing a judicial act ? Or can the ſtipulation taken in an act not judicial be a judicial act ? I doubt whether this be a judicial act. But it is a reaſonable and fair way of

ferving the owner, by the earlieſt and eaſieſt method 1793.
of tranſmitting his money to him. And the only light
in which I can conſider *Lacaze* and *Mallet*, in this
tranſaction, is as the voluntary agents of the judge of
the Admiralty, intruſted by him, at their requeſt with
the cuſtody and tranſmiſſion of this money. For the
performance of this truſt, and for indemnifying himſelf,
he takes this ſtipulation. Is he not then acting at his
own riſk, as a man, not regularly as a judge? And
would not a better way have been, to have taken a
bond?

There being yet grounds of doubt, I proceed to the
third queſtion.

3. Is this ſtipulation, independent of all judicial cir-
cumſtances, ſuch a contract, as will maintain an action
of debt againſt *Lacaze*, *Mallet*, and *Roſs*?

In conſidering whether this ſtipulation, ſtript of all
judicial ſolemnity, and taken only as a contract *en pais*,
be ſufficient to maintain an action of debt againſt *La-
caze*, *Mallet*, and *Roſs*, I lay aſide all conſideration of
the manner, in which the court of Admiralty got poſ-
ſeſſion of the money. Holding it a matter of indiffer-
ence, whether the judge and officer of that court acted
by authority, or as treſpaſſers. I conſider it as undiſputed,
that they might make ſuch a contract, and I proceed to
examine its legal operation on the plaintiffs in error.

*Pennſylvania*, whether by wright or wrong, it is im-
material, being in poſſeſſion of this coin, gave it up to
*Lacaze* and *Mallet*, to deliver to *Lanoix* ; and *Lacaze*,
*Mallet*, and *Roſs*, bound themſelves to *Pennſylvania*, in
the penalty of 40000l. ſterling, that *Lacaze* and *Mallet*
would deliver it to *Lanoix*. If *Lacaze* and *Mallet* had
been the agents of *Lanoix*, *Roſs* might have had the ad-
vantage of this, at the trial ; and, after this verdict, I
will take it, that they were not, and that this was not an
engagement, that a man entered into, as a neceſſary mean 2 *Str.* 915.
of obtaining his own money ; but an engagement en-
tered into, whereby he obtained the money of another *Bracton B.3,*
man, for the purpoſe of delivering it to him. It was a 1 0
bailment, a fair contract, and the bailee, though acting *Wheatly v.*
*Low Cro J.*
*gratis*, is liable, on the implied undertaking, for groſs 657, *Coggs*
negligence, and on an expreſs undertaking, for the due *v. Barnard,*
execution. For he undertakes and is truſted, on thoſe *L. Ray* 909,
920.

terms. This confidence of the bailor is a sufficient consideration for the undertaking of the bailee, and thus a contract is formed, which, without any valuable consideration, request, or writing, binds the bailee.

By the law of nature and nations, and, therefore, by the law merchant, which is founded on that law, a fair and deliberate contract is, of itself, and without any consideration to induce it, a good ground of action. But, by the civil law, if some consideration, other than the contract itself, do not exist, this bare contract, unless ratified by certain solemnities, bound not the party making it. The law of *England*, borrowing this principle, seems to have adopted it in its full latitude, and, holding a consideration necessary, never presumes one, unless the contract be confirmed by the deliberate solemnity of writing, sealing, and delivery.

A consideration is sufficient to support a promise, if it be either a benefit to the party promising, or a loss to him, to whom the promise is made, or if the party promising be under a legal, equitable, or moral obligation, to do what he promises: or if he, to whom the promise is made, trusting to it, foregoes an advantage, or suffers a consequential loss; as if one, without any consideration, promise to keep my goods safely; or a carpenter promise to repair my house; though they do not, no action will lie on this promise, until I suffer some loss, through their default; but if, trusting to such promise, I deliver my goods to this bailee, and he spoil them, or lose them; or, waiting for the carpenter to repair my house, according to his promise, which he neglects to do, I suffer damage; or if he does it unskilfully; for my loss, through the non-performance or misperformance of these undertakings, I may support an action.

Plaintiff, being indebted to *A.* delivered a sum of money to defendant, to pay over to *A.* Defendant paid it not. *A.* sued plaintiff, who thereupon sued defendant, for a breach of his trust and promise, and had a verdict. Defendant moved in arrest of judgment, because there was no consideration. This objection was over-ruled, and the judgment given was affirmed on error. Before the intermarriage of the plaintiffs, the father of the husband had promised to the wife, that, if the marriage took effect, he would assure them certain land. Defendant,

1793.
*1 Powel Contr.* 364-5.

*1 Powel Contr.* 331, 343.
*2 Comm.* 445 —6. *3 Burr.* 1663.

*2 Comm.* 445 —6. *3 Bac. Abr* 146.
*Cowp.* 290-4.

*1 Powel Contr.* 331 4.
*Ld. Ray* 909-19.

*Wheatly v. Low. Cro* 7. 668. *1 Powel Contr.* 365-6.

*Brown & ux v. Garborough Cro. El.* 63.

1793.

his coufin, ftanding by, promifed her, if the father did not, that he would give her 100*l.* The marriage took effect, and the promife of 100*l.* was held good; not only becaufe they were of kin, but becaufe the woman trufted defendant, rather than the father of her hufband.— The laft is, of itfelf a fufficient, and, I think, the true reafon. There was an agreement between plaintiff and *A.* that plaintiff fhould have a leafe of *A.* with divers covenants. At the day of fealing, plaintiff refufed, on account of the infertion of a new covenant, concerning repairs. Defendant, ftanding by, took on himfelf to make the repairs, if plaintiff would feal the leafe. He did fo, and, in *affumfit*, this was held a good confideration, though the fealing of the deed was of no confequence to the defendant.

*v. Storer Dyer, 272 b. pl. 32. in not. See 1 Powel Contr. 345. Cro. J. 342e Hob. 4, 5.*

Mutual promifes are confiderations for each other; and a confideration very trifling will fupport a promife; as " if you fhew me a deed, whereby it appears, rent is due, I will pay you;" or " if you will come fuch a day, I will pay you:" in thefe cafes, the fhewing of the deed, or the going to the houfe, is a fufficient confideration. But no confideration that is executed, and intirely paft, from which no legal, equitable, or moral duty remains, will fupport a promife : for the promife being fubfequent could not have been the inducement, which caufed the confideration, and is therefore altogether voluntary and gratuitous. In applying this rule, we muft diftinguifh thofe cafes, where the confideration is not intirely paft, but confifting of feveral parts making, in the whole, one tranfaction, of which though fome part of it be paft, fome part yet remains to be executed. As where one agreed to demife a fhop to another, paying 40*s.* by the year; and for the perfecting thereof each gave the other one fhilling. Afterwards, in confideration of the premifes, leffee promifed to give leffor 30*l.*; in confideration whereof, and in performance of the contract, leffor made a leafe to leffee. It was held that the promife of 30*l.* was good. For the leafe was after the promife. The agreement is in performance of all, not of part. It was leffor's part to make the leafe to the defendant, and his part to pay the rent and 30*l.* in confideration of his quiet enjoying. So, in *affumfit*, plaintiff declares, that, in confideration that he had, on 10th *December*, bought land of defendant, afterwards, on 19th *December*, defend-

*1 Powel Contr. 343, Sturiy v. Albany, Cro. El. 6-, 150. Gilbert v. Rudderhead Dyer 272. b. pl. 32, in not. 1 Powel Contr. 348-52. Hunt v. Bale Dy. 272, b pl. 31. Barker v Halifax Cro. El. 741. 1 Com. Dig. 142.*

*2 Bulftr. 73. 1 Powel Contr, 349.*

*Warcop v. Morfe, Cro. El. 138 See alfo Cro. El. 42, 94, 138.*

1793.

*Dy. 272, b. 31.*
*3 Bulstr. 18?.*
*1 Rolle Rep.*
*381, Rolle*
*abr 12. pl. 10.*
*1 Powel Contr.*

ant promifed to make him a fufficient affurance thereof, by fuch a day. After verdict, it was urged, that the confideration was paft. But it was adjudged for the plaintiff; for the affurance was the fubftance of the fale and the tranfaction.

*3 2. Dyer*
*272. b 32.*
*Bofden v.*
*Thinn, Cro.*
*7. 18. Siden-*
*bam v. Wor-*
*thington, Cro.*
*El. 42. Cro.*
*Car. 40?.*
*Salk. 96.*
*Comp 294.*
*Cro. El. 42.*
*Dyer 272. b.*
*32 in not.*
*1 Powel Contr.*
*35 1.*

And, though the confideration be intirely paft, if it was done, at the requeft of the party promifing, the law, giving the promife a relation back to the requeft, holds it fufficient. If *A.* requeft me to give my credit to *B.* for 50*l.* I give my bond, am fued, and have to pay 70*l.* and I fhew this to *A.* who promifes to pay me 70*l.* this promife is good. So, though the confideration be paft, if there be a fubfifting duty, at the time of the promife, it will bind; as a promife to pay a fervant wages, for paft fervice, or to pay a debt barred by the ftatute of limitations, or contracted during infancy. So *affumfit* lies for the burial expences of the wife or child of another, without requeft.

On the principles which have governed thefe decifions, no doubt can remain, that the promife, made by thefe parties, to the ftate of *Pennfylvania,* acting by its agent, the judge of Admiralty, is fufficient to fupport an action. Here is an undertaking and a breach of truft, which, without any confideration, is fufficient. Or, fuppofing a confideration neceffary, and the order of the Admiralty to be the confideration, it was not altogether paft; it was but part of a tranfaction, the moft material part of which, and the principal object in the view of all the parties, the delivery of the money, like the execu-

*2 Bulftr. 73.*
*Cro. El. 138.*

tion of the leafe, and quiet enjoyment under it, in one of the cafes cited, or the execution of the conveyance, in another of the cafes, remained to be executed by *Pennfylvania,* after the promife was made, and was a confequence of the promife; though the order of the court in this cafe, and the agreement for the leafe, and for the purchafe in the other cafes, be ftated as the confideration, and be previous to the promife. But fuppofing the confideration paft, it was preceded by a requeft of the party promifing. The order was made, on the petition of *Lacaze* and *Mallet.* And the whole tranfaction may be confidered as mutual promifes; on the part of the court, to give the money; and on the part of *Lacaze, Mallet,* and *Rofs,* that *Lacaze* and *Mal-*

*let* fhall remit it to *Lanoix.* And, in almoft every view that you can take of it, the promife is fufficient.

1793.

But every promife, that is good in law, will not fupport every action: and there are promifes, which, though they will fupport an action, will not fupport an action of debt.

Had all the plaintiffs in error been bailees, there would have been lefs difficulty in declaring the operation of fuch a contract, as this. But the difficulty arifes from *Rofs,* to whom the money was not delivered, being involved in the fame contract with *Lacaze* and *Mallet,* to whom the money was delivered.

It is not a new thing, to confider parties to the fame contract, as equally bound, for one purpofe, but feparate, for another. In an annuity contract, it was held, that the furety, though liable, on the exprefs contract, for the payment of the annuity, was not liable, on the implied contract, on the annuity becoming void, to return the confideration money, which he had never received: but the principal was held liable, on this implied contract. I cite this cafe, not as parallel to the prefent cafe, for this is an exprefs promife by all, but as fhewing, that parties, equally bound for one purpofe, *may* not be equally bound for every purpofe of the fame tranfaction. And here, it may be contended, that *Rofs,* though liable on the fpecial undertaking, to remit the money, is not liable in debt, for what he never received.

*Rafiall v. Avarne,* 2 *T. Rep.* 366.
1 *Powel Contr.* 209-31.
*Shove v. Webb,* 1 *T. Rep.* 732.

*Indebitatus affumfit* was brought on a bill of exchange accepted. There was a verdict for plaintiff, and a motion in arreft of judgment, becaufe, though cafe lies on a bill of exchange accepted, on the cuftom of merchants (which requires no confideration) yet *indebitatus affumfit* (which lies only where debt lies) cannot be brought thereon. It was held, that a bill of exchange accepted, though a good ground of a fpecial action on the cafe, on the cuftom of merchants, does not make a debt, becaufe the acceptance is conditional on both fides, if the money be not received, it returns on the drawer, who remains liable ftill, and this is but collateral; and becaufe the word *onerabilis* does not imply debt; and becaufe it is but evidence of a promife to pay, which is *nudum pactum* : but debt lies on it againft the drawer himfelf, for he is really a debtor by the receipt of the money. Debt, or

1 *Salk.* 23.
1 *L. Ray* 69.
2 *Burr.* 1009.
*Hardr.* 485.

*Brown v. London,* 1 *Mod.* 285.

1 *Salk.* 23.
12. 2 *L. Ray* 1035.
2 *Com. Dig.* 64.

1 *Ventr.* 1 98

*1793.*

*2 Com. Dig. 64?. 1 Salk. 23, 125. 3 Salk.14,175 L. Ray, 69, 1034-5,1 Salk 23. L. Ray, 84o,982,224. 1 Esp 1 3. Dyer,230,pl. 56 Sands v. Trevilion, Cro. Car. 107.193. 2 Com. Dig 639, 1 Roll. 594,35 Dyer 272. Hardr. 485. Shandow v. Simfon. Cro. El. 880.*

*indebitatus affumfit,* lies not for intereft of money due on a loan; for money won at play, or on a wager; nor on mutual promifes; for there muft be a confideration, a *quid pro quo,* to fupport debt, or *indebitatus affumfit* :— but *affumfit* lies in thefe cafes. A declaration in *indebitatus affumfit,* againft a father, for money *lent* to his fon, at the requeft of the father, is bad; for *lent* is a technical word, and creates a debt in the fon, to whom it is lent, and cannot be lent to two; but it would have been good, if *delivered* to the fon, at the requeft of the father: for then the *loan* had been to the father: but being now to the fon, the father is only collaterally bound, and liable in a fpecial *affumfit.* So, though for goods fold, or fervice done, to another, at the requeft of a third perfon, debt lies not againft him who requefted; for the contract is by the *fale,* and the *fervice done,* yet being to another, there is no *quid pro quo,* and requeft, without more makes not a debtor; yet on a contract, to retain one, to embroider the gown of a third perfon, he has election to have debt or *affumfit.*

*2 Com, Dig. 639.9H.5,14. Baxter v. Read. Dyer, 272, in not.*

If one undertake, that if *A.* releafe his debt to *B.* he himfelf will be his debtor, debt lies not. *B.* retains *R.* to be miller to his aunt, at 10s. per week; debt lies not on this, but an action on the cafe: for, in debt it is requifite, that the benefit come to the party who promifes; and fo, for the want of a *quid pro quo,* debt does not lie: but this will fupport an action on the cafe; for though it be not beneficial to *B.* it is chargeable to *R.* Debt lies not on a collateral en-

*Hardr. 486.*

gagement, as for goods delivered by *A.* to *B.* at the requeft of *C.* which *C.* promifed to pay, if *B.* did not; for in that cafe, a debt or duty does not arife between *A.* and *C.* but a collateral obligation only.

Though changing the form of the action, change neither the juftice of the demand, nor perhaps the amount of the recovery, thefe cafes manifeft a diftinction between parties liable on the fame contract, and in the forms, by which the fame fum may be recovered. Perhaps the fame diftinction may be hinted in the following cafe.—

*Hob. 216. 1 Powel, Contr. 344.*

Teftator promifed to pay the plaintiff 50l. if he would forbear to profecute an attachment of privilege againft him. On this promife, plaintiff brought *an action on the cafe,* againft defendant, executor of the promifer. It was held, that the confideration was good, and that *debt* would

1793.

have lien againſt the teſtator, for 50*l.* being a ſum due on a contract, in which he received *quid pro quo* : for, forbearing the ſuit was as beneficial in ſaving, as other things in gaining.

If from theſe caſes, it ſhould be collected, that the ground of an action of debt is the conſideration or equivalent given by the *debtee,* to the *debtor,* without which, either proved or preſumed, no debt can be raiſed ; and that damage, ariſing from the breach of a promiſe, is a ground only for a ſpecial *aſſumſit* ; it may be contended, that, though debt lies againſt *Lacaze* and *Mallet,* who actually received the money, it lies not againſt *Roſs,* who received none of it, and is not bound by a ſpecialty, for its remiſſion or repayment.    Though the receipt of the money created a debt or duty, in *Lacaze* and *Mallet* ; the promiſe of *Roſs,* without ſuch receipt, created none in him ; and raiſed only a covenant or *aſſumſit,* for the breach of which, damages will be recovered.

But, it may alſo be contended, this action is not brought for the money intruſted to *Lacaze* and *Mallet,* but for a fixed penalty expreſſly ſubmitted to by *Lacaze, Mallet,* and *Roſs,* and acknowledged due by them to *Pennſylvania,* if *Lacaze* and *Mallet* did not perform their truſt ; and, though it never was the duty of *Roſs,* to tranſmit the money delivered to *Lacaze* and *Mallet,* it became his duty, as well as theirs, to pay the penalty, when they had failed to tranſmit the money delivered to them.

Actions for penalties are not favoured ; and the diftinction between a contract for a real debt, and for a penalty, is not new in the law, even when the penalty is ſtipulated for, by the ſolemnity of a deed. A promiſe or ſingle bill, by an infant, for a debt due for neceſſaries, is good ; but a bond with a penalty, for ſuch debt, is void. A contract, upon good conſideration, to reſtrain from trading in a particular place, is good ground of *aſſumſit* ; but a bond or covenant, to pay a ſum certain was held void, becauſe it left not the matter open to a jury, to make the damages commenſurate to the conſideration and injury ; but, whatever might be the conſideration or injury, made the whole penalty recoverable, in an action of debt.    A later deciſion has, indeed, overruled this diſtinction.

1. Becauſe the penalty is favourable to the obligor, as fixing the ſum, for which, he may repurchaſe his trade.

*1 P. Wms.* 194
*Ayliff v. Archdale.*
*Cro, El.* 920.
*Clerk v. Gov. & Co. of Taylors, in Exchequer on error,—and judgment of B. R. reverſed,*
*3 Lev.* 241.
*March* 77.
193. *Moore pl.* 59. 279.
*2 Leon* 210.
*Nov.* 98.
*1 Powel Contr.* 169. *Mitche v. Reynolds,* *1 P. Wms.* 181, 197.

1793.

2. Becaufe it is his own act.

3. Becaufe he can fuffer only by his own knavery ; and courts are not to protect that from paying too much.

4. Becaufe reftraints by cuftom of particular places may be enforced by penalties ; and

5. Becaufe, whether the contract be good or not, on confideration of the circumftances, is matter of law, not fit for a jury. It is true, fince the equitable powers of courts have permitted no more than the real debt or damages to be recovered, the action of debt feems to have but the fame effect as covenant ; and the reafon given, for the diftinction above mentioned, lofes its force. But it is alfo true, that the *firft* reafon, for over-ruling the diftinction, is not applicable to the prefent cafe ; for it can never be favourable to the obligor, to pay double the fum due. So alfo the *third* reafon applies not to *Rofs*. And the *fourth* and *fifth* reafons have no operation on this cafe. To over-rule the diftinction in this cafe, there remains only the *fecond* reafon. But this reafon, what-ever weight it may deferve, in fupport of a deed, muft

*Vinn. Juft. Inft.554.*
*1 Powel. Contr.* 330.

have lefs, when applied to a parole contract. For fince words are frequently fpoken inadvifedly, and without due deliberation, the fame law, which requires a confideration to fupport fuch a contract, would perhaps hefitate, on a tranfaction of fo little folemnity, to declare a penalty incurred.

*Prefton v. Tooley, Cro. El.* 74.

A fpecial *affumfit* feems to have been brought, on a cafe like the prefent. *A.* promifed to *B.* that, if he would deliver to him a ftatute ftaple, which he had on *C.* for 1000*l.* to look at, he would keep it fafely, and deliver it to *B.* or pay him 1000*l.* As, on the writ of enquiry, only 200*l.* damages were found, it feems reafonable to prefume, that the 1000*l.* in the ftatute ftaple was a penalty, and the 1000*l.* in the promife, was therefore a penalty alfo ; and, though a precife fum was promifed, and the action was againft a principal only, *affumfit*, and not debt, was brought, on this promife. In the cafe before us, if *affumfit* had been brought, I have no doubt, it would have lien : and, for the reafons which I have ftated, I am inclined to think *affumfit* the moft proper form of action, on this engagement.

*Lady Shan-dois v. Simfon Cro. El.* 880.

But, notwithftanding this opinion, and thofe reafons, which have given me very ferious doubts, on this fub-

ject; as the boundary between *debt* and *assumpsit*, in some 1793.
of those cases, appears to be nice, if not to shift from side
to side; as, in the cases of retaining one to do a service to 2 *Roll.* 77.
another, it is sometimes held, that debt lies, sometimes, 2 *Com. Dig.*
638 *Cro.Car.*
that it lies not, but *assumpsit* only, and debt against the 187, 193.
person, for whose use, the service is, and sometimes, that *Dyer* 230, *b.*
the person retained has his election of debt or *assumpsit* 56 *Bradford*
against the person retaining; as here is an express en- *Cro. J. 520.*
gagement, by all the plaintiffs in error, on a certain
default, to pay a certain sum of money; as this is a pro-
mise, on a good consideration, and as a promise, on a
good consideration, binds, without deed, and the use of
a specialty is, that a consideration is implied; and, as the
only effect of giving way to my doubts would be, to
change the form of the action, delay justice, and add to the *H. Bla.* 241.
loss and vexation of the injured party; I will not, at
this state of the proceeding, say, that this action shall not
be maintained. As it is undecided, that no action lies
on a stipulation, and doubtful whether this be a judicial
proceeding; yet, being a fair, deliberate, and solemn
contract, the strong principles of justice require, that a
remedy should be administered; and this *may* be a pro-
per remedy.

But, supposing a proper form of action to have been
chosen, unless it have also been properly prosecuted, the
proceeding will be erroneous. The *fourth* question,
therefore, remains to be considered.

4. Is a breach of this stipulation sufficiently set forth
in the declaration?

I am of opinion, that, after defence, verdict, and judg-
ment, we ought to presume, that *Lanoix* was owner of
this money, and, of course, that a breach is sufficiently
set forth, to support this record. It appears in the in-
formation, that *Lacaze* and *Mallet* themselves stated this
in their petition; shall they now deny it? Unless *Lanoix*
had been the owner of the money, would they not have
controverted it? And is it not established by the verdict
for his use? If he had not been the owner of the mo-
ney, the defendants would have so pleaded or shewn it,
in discharge of themselves from the present action. It is
averred, in the words of the stipulation, that *Lacaze*
and *Mallet* did not perform the trust reposed in them.

*I*

1793.

And, even, if the money belonged not to *Lanoix*, it is better, that it be in the hands of the Commonwealth, as a truftee for the true owner, than in the hands of *Lacaze* and *Mallet*, who have no privity or connection with the owner, if he be not *Lanoix*; and who have not performed their truft.

I am, therefore, of opinion, that the judgment given in the Supreme court be affirmed; and I am pleafed to find no fufficient reafon, to obftruct its effect, and longer delay the payment of a juft debt.

Judgment affirmed.